**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,**
Petitioner,

v.

**Willie A. GRAHAM, Respondent.**

**and**

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Intervenor.**

**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY,**
Petitioner,

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and George E. Jones, Respondents.**

Nos. 76–2297, 77–1100.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 10, 1978.

Decided March 13, 1978.

Robert H. Joyce (Luther G. Jones, III, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., William McL. Ferguson, Shannon T. Mason, Jr., Ferguson & Mason, Newport News, Va., on brief), for petitioner.

Linda L. Carroll, Atty., U. S. Dept. of Labor, Washington, D. C. (Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol. and Francine K. Weiss, Atty., U. S. Dept. of Labor, Washington, D. C., on brief), for respondent Director, Office of Workers' Compensation Programs.

Stuart R. Gordon, Howell, Anninos, Daugherty & Brown, Norfolk, Va., on brief, for respondent Willie A. Graham in 76–2297.

H. Duncan Garnett, Jr., Jones, Blechman, Woltz & Kelly, Newport News, Va., on brief, for respondent George E. Jones in 77–1100.

Before HAYNSWORTH, Chief Judge, and BUTZNER and HALL, Circuit Judges.

BUTZNER, Circuit Judge:

Willie A. Graham and George E. Jones were injured in separate accidents while working for the Newport News Shipbuilding and Dry Dock Co. Both employees claimed compensation for their injuries under the Longshoremen's and Harbor Workers' Compensation Act as amended in 1972, 33 U.S.C. §§ 901, *et seq.* In these consolidated cases, Newport News Shipbuilding seeks to set aside the orders of the Benefits Review Board awarding compensation to both claimants. We deny the petitions and affirm the Board.

Under the 1972 amendments to the Act, eligibility for benefits depends on the situs

of the worker's injury and his status. To be compensable, injuries to covered employees must occur,

> upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel). 33 U.S.C. § 903(a).

Eligible employees are those,

> engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker . . 33 U.S.C. § 902(3).

The claimant must satisfy both of these statutory requirements. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 265, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

## I

Graham worked as a "chipper" in a submarine shop which was located 1200 feet from the water. The shop primarily fabricated component parts for nuclear reactors. As a chipper, Graham's duties generally consisted of using a chipping hammer to clean castings and welds. He suffered a lower back strain while removing a temporary alignment piece from a sonar shield. Although the submarine shop does some work for land-based reactors, the sonar shield Graham worked on was installed in the reactor room of a submarine being constructed in a shipway approximately 1900 feet from the shop. Graham's duties did not include actually installing parts on ships.

Jones had worked in the shipyard for longer than 25 years. He was rated as a mechanic and belonged to the maintenance department. Jones dislocated his shoulder when he bumped against a sandmill machine while greasing it. Although he had been assigned to oil machinery in the foundry for the last four or five years, members of the department work throughout the shipyard. In the past, Jones has worked on the waterfront and aboard ship. During the month of Jones's injury, about 15 per cent of the foundry's work was for the shipyard's own ship repair and construction projects, and about 12 per cent involved ship related work for a wholly owned subsidiary, Newport News Industrial Corp. The remaining 73 per cent involved production of non-maritime items for Newport News Industrial Corp.

## II

Both claims meet the Act's situs test. The submarine shop and the foundry are integral parts of the shipyard even though they are located 1200 feet and 3000 feet respectively from the water's edge. Other cases have held that injuries sustained in a carpentry shop located 300 feet from water and in a structural steel shop located 2000 feet from water were covered under the Act. *Halter Marine Fabricators, Inc. v. Nulty, reported sub nom., Jacksonville Shipyards, Inc. v. Perdue*, 539 F.2d 533, 543 (5th Cir. 1976); *Dravo Corp. v. Maxin*, 545 F.2d 374, 381 (3d Cir. 1976). The steel shop in *Maxin*, like the foundry and submarine shop in this case, was not devoted exclusively to ship related work. Relying on these precedents, we hold that the submarine shop and the foundry are included in the statutory concept of "navigable waters of the United States" because they are located in an area adjoining such waters "customarily used by an employer in . . repairing, or building a vessel." 33 U.S.C. § 903(a).

## III

Both claims also meet the Act's status test. At the time of his injury, Graham was clipping a sonar shield that was later installed in a submarine. After careful analysis of the Act, other courts have ruled that an employee who works in a fabrication shop on component parts of ships is a

shipbuilder. *See, e. g., Ingalls Shipbuilding Corp. v. Morgan,* 551 F.2d 61, 62 (5th Cir. 1977) (employee killed while cleaning a steel plate that would later be used for construction or repair of ships); *Jacksonville Shipyards, Inc. v. Perdue,* 539 F.2d 533, 543–44 (5th Cir. 1976) (carpenter injured while building a piece of woodwork for installation on a new ship); *Dravo Corp. v. Maxin,* 545 F.2d 374, 376 (3d Cir. 1976) (employee injured while burning steel plates which would ultimately become bottoms and decks of barges). Since Graham was engaged in an integral part of the submarine's construction, he meets the status test.

■ At the time of Jones's injury, he was oiling a machine used in building ships. Precedent supports the conclusion that he, too, was a maritime employee as defined in 33 U.S.C. § 902(3). In *Bradshaw v. McCarthy,* 3 BRBS 195 (1976), *petition for review denied,* 547 F.2d 1161 (3d Cir. 1977), a mechanic injured his back in a marine terminal while removing a tire from a forklift that was used in longshoring operations. The Board said:

> Merely because a waterfront mechanic is not directly involved in the actual loading or unloading of cargo does not remove him from the coverage of the amended Act. The maintenance and repair of longshoring machinery and equipment is essential to the movement of maritime cargo and, thus, such an employee's duties are included in the broad concept of maritime employment. 3 BRBS at 198.

The Fifth Circuit suggests that an employee meets the status test if he is "directly involved" in the work of building a ship even though he does not actually perform that work himself. *Jacksonville Shipyards, Inc. v. Perdue,* 539 F.2d 533, 539–40 (5th Cir. 1976). Applying this principle in *Alabama Dry Dock and Shipbuilding Co. v. Kininess,* 554 F.2d 176, 178 (5th Cir. 1977), the court held that an employee injured while sandblasting a disassembled crane was entitled to compensation under the Act

because "[m]aintenance of the crane was necessary to enable it to perform its eventual function of hauling fabricated ship sections to the water's edge."

Jones's job is significantly different from those involved in two recent decisions denying benefits. In *Dravo Corp. v. Banks,* 567 F.2d 593 (3d Cir. 1977), the court held that an unskilled laborer who was injured while spreading salt on ice was not covered under the Act. Banks's job lacked the close, functional relationship that existed between Jones's job and the operation of machinery used in building ships. Jones's maintenance work was as essential to the utilization of the machinery as the work of machine operators. Banks's connection to production was tenuous. Even more tenuous was the connection between production and the work of the clerical employee denied benefits in *Maher Terminals, Inc. v. Farrell,* 548 F.2d 476 (3d Cir. 1977).

Because Jones's maintenance was essential to keeping the shipyard's machinery in working order for the construction of ships, we conclude that he was a shipbuilder within the meaning of the Act.

■ The shipyard argues that even if Jones qualifies under the Act, the admiralty and maritime clause of the Constitution, Art. III, § 2, Cl. 1, does not confer power on Congress to extend coverage to him. Similar arguments recently have been rejected by other courts. *See, e. g., Dravo Corp. v. Maxin,* 545 F.2d 374, 375 (3d Cir. 1976); *Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 56–57 (2d Cir. 1976); *Sea-Land Service, Inc., v. Director,* 540 F.2d 629, 635–37 (3d Cir. 1976); *Jacksonville Shipyards, Inc. v. Perdue,* 539 F.2d 533, 544–46 (5th Cir. 1976). For reasons fully expressed in these opinions, we conclude that Congress acted constitutionally when it extended the Act's coverage to an employee maintaining machinery utilized to build ships in a shipyard adjoining navigable waters even though his shop was relatively distant from the shore.

## IV

We find no error in the assessment and computation of a penalty, for the shipyard failed either to compensate Jones under the Act or to file a notice controverting his right to compensation within 14 days after it learned of his injury as required by 33 U.S.C. § 914(e). The penalty is mandatory unless nonpayment is due to conditions beyond the employer's control. The administrative law judge did not abuse his discretion by relieving Jones of his counsel's improvident stipulation, which was made at the suggestion of the shipyard's attorney, that all notices had been timely filed. We also find no error in the allowance of interest.

After oral argument, Graham's attorney moved for the allowance of a fee, setting forth in an itemized statement the dates on which he had performed specified services and the hours expended each day. Counsel for the shipyard opposed the request, complaining that both the rate per hour and the number of hours were excessive.

Title 33 U.S.C. § 928(a) directs the court to award attorneys' fees to counsel for a successful complainant whose employer has denied liability for compensation. To implement this statute we have decided to follow the procedure suggested by Judge Gibbons in *Atlantic & Gulf Stevedores, Inc. v. Director*, 542 F.2d 602, 610 (3d Cir. 1976). After a panel of the court has announced its decision on the merits of the petition for review, it will consider a verified motion for allowance of fees. A copy of the motion should be furnished the employer's counsel who will be afforded an opportunity to respond. Ordinarily the panel will determine the award without oral argument or reference to a master. The panel will consider the attorney's professional qualifications, the time he spent in preparation and presentation of the case, his regular billing rate, the fees allowed by the administrative law judge and the Board, and the amount of the recovery. The motion should provide all of this information. In addition, the court will consider the complexity of the issues, the support to the claimant afforded by the Director, the quality of counsel's services, comparable billing rates, other matters it deems pertinent, and those called to its attention by either the motion or the response.

Graham's attorney has complied substantially with this procedure, and the employer has fully responded. Therefore, no purpose would be served by requiring another submission. We find nothing lacking in the attorney's services; nevertheless, we have concluded that he is not entitled to the full amount which he requested. He presented the same issues to the administrative law judge and the Benefits Review Board, and he has already been awarded attorney's fees from these agencies. While his research had to be updated and a brief prepared, much of his argument was necessarily a repetition of what he said in the administrative proceedings. Moreover, the employee's recovery is small, and the Director provided substantial assistance. Considering all of these factors, we believe that a fee in the amount of $750 is appropriate. Counsel should apply to the clerk for taxation of printing costs. Federal Rule of Appellate Procedure 39.

The petitions to set aside the awards are denied and the orders of the Board affirmed.