John B. PRICE, Jr., Appellee,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, Appellant.

No. 78–1619.

United States Court of Appeals, Fourth Circuit.

Argued April 2, 1979.

Decided April 9, 1980.

Edward L. Oast, Jr., and William T. Prince, Norfolk, Va. (Williams, Worrell, Kelly & Greer, Norfolk, Va., on brief), for appellant.

William F. Burnside, Virginia Beach, Va., for appellee.

Before BREITENSTEIN *, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

The plaintiff, John Price, was injured in the course of his employment with the defendant, Norfolk and Western Railway Company (N&W), and brought an action under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60, against N&W to recover damages for his injury. The defendant moved to dismiss the case for lack of jurisdiction, arguing that the plaintiff was a longshoreman as defined in the Federal Longshoremen's and Harbor Workers' Compensation Act (LHWCA or the Act), 33 U.S.C. § 901 et seq., and therefore his exclusive remedy was for compensation under that act. The district court found that Price was not a longshoreman and thus refused to dismiss the case. The case was then tried to the district court who found for the plaintiff and awarded damages of $4,000.00 less a credit of $1,216.72 for previously received benefits under the LHWCA.[1] Defendant appeals.

On appeal the parties agree, as they must, that if Price was a longshoreman his exclusive remedy was under the LHWCA and the district court was without jurisdiction over his FELA claim. 33 U.S.C. § 905; *Pennsylvania Railroad Co. v. O'Rourke,* 344 U.S. 334, 73 S.Ct. 302, 97 L.Ed. 367 (1952); *Nogueira v. New York, New Haven & Hartford Railroad Co.,* 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754 (1930). Thus, the sole issue before us is whether Price was an "employee" within the coverage of the LHWCA.[2] 33 U.S.C. § 902(3) states:

> The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

In determining whether Price was an employee within the meaning of § 902(3), it is necessary to examine the operations at the port facility where Price was injured and the nature of Price's work. The defendant, N&W, owns and partially maintains a grain elevator complex at Sewells Point in Norfolk, Virginia. The grain elevators are operated by Continental Grain Company, and are used for the receiving and shipping of grain. The incoming grain handled at the facility is received there by rail, truck, ship, or barge, and the outgoing grain is loaded into vessels in the deepwater berths alongside the elevator.

The grain is loaded onto the ships by a conveyor belt system housed in a structure called a gallery. The belt system transports the grain from weighing scales and pours it through chutes directly into the hold of the vessel. In the unloading process, the grain is removed from the vessel by a marine leg elevator system, transferred to the gallery belt system, and transported by these belts to the scales for weighing. Thus, in both loading and unloading the grain is moved by the gallery belt system between the scales and the vessel.

The gallery belt system is used only for conveying the grain (loading and unloading

---

1. Price's previous acceptance of benefits under the LHWCA does not necessarily prevent him from asserting rights under the FELA, for accepting such benefits is not a binding election of remedies. *Freeman v. Norfolk & Western Railway Co.,* 596 F.2d 1205 (4th Cir. 1979).

2. The plaintiff does not contest the fact that N&W is an employer within the meaning of 33 U.S.C. § 902(4) or that the injury occurred on navigable waters within the meaning of 33 U.S.C. § 903(a).

ships and barges) and is not used for its storage. The storage facilities are further inland.

The plaintiff, Price, was injured while painting the support towers for the gallery, a part of its routine maintenance which is the responsibility of N&W. The support tower is not a part of the mechanism that actually operates the belt system housed within the support tower. The gallery, and its maintenance, are essential to the loading and unloading of all vessels at the Sewells Point port facility.

The plaintiff was classified as a painter by N&W, and at the time of the accident was assigned to Paint Force # 1, the only N&W paint gang working at the Norfolk Terminal. Except for the painting of railroad cars, which was done by the shop crew, the Paint Force performed all the painting at the Norfolk Terminal. The painting included work on the warehouses, docks, drawbridges, and coal piers.

We feel that our decision in *Newport News Shipbuilding & Dry Dock Co. v. Graham*, 573 F.2d 167 (4th Cir.), cert. denied, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978), is controlling in this case and requires that we reverse the district court's holding that Price was not an employee within the meaning of the Act and therefore was entitled to recover under the FELA. In *Graham*, a claimant Jones was seeking compensation under the LHWCA for injuries sustained when he bumped against a machine which he was oiling. The machine was used in building ships. He was rated as a mechanic and belonged to the maintenance department of the employer.[3] In holding that Jones was entitled to compensation under the LHWCA, we stated: "Because Jones's maintenance was essential to keeping the shipyard's machinery in working order for the construction of ships, we conclude that he was a shipbuilder within the meaning of the Act." Id. at 170.

In so holding, we cited with approval a Benefits Review Board decision that is directly on point. In *Bradshaw v. McCarthy*, 3 BRBS 195 (1976), petition for review denied, 547 F.2d 1161 (3d Cir. 1977), a mechanic injured his back in a terminal while removing a tire from a forklift he was repairing. The forklift was used to unload ships and to load freight cars, tractors, and trailers. In holding that the claimant was an employee as defined in the Act, the Board stated:

> Merely because a waterfront mechanic is not directly involved in the actual loading or unloading of cargo does not remove him from the coverage of the amended Act. The maintenance and repair of longshoring machinery and equipment is essential to the movement of maritime cargo and, thus, such an employee's duties are included in the broad concept of maritime employment.

Id. at 198. We can discern no significant distinction between the repair of machinery essential to the movement of maritime cargo and the painting of a structure essential to the loading and unloading of the same. Nor can we discern any significant distinction between oiling a machine used in building ships, as was the claimant in *Graham*, and painting a structure used in loading and unloading ships. There is no doubt that employees employed in "taking cargo out of the hold, moving it away from the ship's side, and carrying it immediately to a storage or holding area" are "'employe[es]'" within the meaning of the amended statute. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 267, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977). The holding in *Graham* that a maintainer of a shipbuilder's machinery is covered requires a holding here that a maintainer of a longshoreman's machinery be covered.

We find no merit in the argument of plaintiff that the fact that the plaintiff was

---

**3.** In *Graham*, only about 27% of the foundry's work involved ship-related work. The record in this case does not indicate what portion of the plaintiff's time was devoted to painting the structures of N&W used for loading and unloading and other maritime purposes, although painting the shiploaders on the coal piers is described as a major job.

merely painting the structure housing the conveyor mechanism that transports the grain, rather than the mechanism itself, is sufficient to distinguish this case from *Graham* and *Bradshaw*.[4] The gallery involved here is just as essential to the actual loading and unloading of ships as the machine involved in *Graham* was to their building. We should add at this point that we also find persuasive the direction of *Northeast Marine Terminal* that we take an "expansive view" of this "remedial legislation." 432 U.S. at 268, 97 S.Ct. at 2359.

Our decision may be read as not in accord with *White v. N&W Ry. Co.*, 217 Va. 823, 232 S.E.2d 807, cert. den. 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977). To the extent it is not, we follow *Graham*, a 1978 case of our court, and with respect simply disagree with *White*. We do not think our decision is contrary to *Conti v. N&W Ry. Co.*, 566 F.2d 890 (4th Cir. 1977) in which the injured employee was employed on the railway cars engaged in hauling coal to the mechanized loaders, not upon the loaders themselves.

Because we think that the plaintiff was an "employee" within the meaning of the LHWCA which provides an exclusive remedy, the judgment appealed from must be

*REVERSED.*

---

4. Plaintiff argues that while the process of loading and unloading would not stop if the support towers of the gallery were not painted, in *Graham* maintenance of the the machine was necessary to allow the building of ships to continue and in *Bradshaw* the loading process would stop without the use of the forklift. We are unpersuaded by this reasoning. Although the loading and unloading process would not stop immediately if the support towers were not painted, the failure to paint would eventually lead to severe rusting that would halt the entire process.