GENERAL DYNAMICS CORPORATION,
Petitioner,

v.

Charles SACCHETTI, Deceased, et
al., Respondents,

and

Director, Office of Workers' Compensa-
tion Programs, United States Depart-
ment of Labor, Respondent.

No. 81–1474.

United States Court of Appeals,
First Circuit.

Argued March 2, 1982.

Decided May 24, 1982.

Norman P. Beane, Jr., with whom Stephen F. Laskin, and Murphy & Beane, Boston, Mass., were on brief, for petitioner.

Lillian C. Levine, with whom Law Offices of Bernard Cohen, Inc., Brockton, Mass., on brief, for respondents Charles Sacchetti, deceased, et al.

Marianne Demetral Smith, Atty., U. S. Dept. of Labor, with whom T. Timothy Ryan, Jr., Sol. of Labor, and Donald S. Shire, Associate Sol., Washington, D. C., were on brief, for respondent Director, Office of Workers' Compensation Programs.

Before COFFIN, Chief Judge, and ALDRICH and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Petitioner General Dynamics Corporation appeals the Benefits Review Board's award for a claim for partial disability filed by one of its employees, Charles Sacchetti, and a claim for death benefits subsequently filed by Sacchetti's widow under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq.* Petitioner argues that the award was improper because Sacchetti was not engaged in "maritime employment" as required for coverage by the Act, *id.,* § 902(3), and even if he were covered, petitioner's liability was limited under § 8(f) because Sacchetti had suffered from a pre-existing permanent partial disability, *id.* § 908(f). We affirm the Benefits Review Board's findings that Sacchetti was an employee within the scope of the Act and that petitioner was fully liable for the amount owed on the claim.

Sacchetti was employed at petitioner's shipyard as a steel rigger/erector, a job that required him to unload raw steel from railroad cars as it came into the shipyard by attaching wires and magnets to the steel, which was then hoisted by crane into storage bays. Sacchetti was also responsible for issuing the steel from the storage bays and harnessing it to the cranes for transportation to the fabrication shop where the construction process began. Between 1974 and 1977 he was exposed to asbestos fibers emanating from a warehouse adjacent to his work area. After noticing a growth on his neck in 1977, he sought medical help, and treatment followed the diagnosis of cancer. The disease could not be arrested, however, and he died in 1979. The administrative law judge (ALJ) found that Sacchetti had suffered from chronic obstructive pulmonary disease (COPD), caused by his habit of smoking moderately until ten years prior to his death *and* by fibrotic changes resulting from his exposure to asbestos. Petitioner does not dispute these findings.

## COVERAGE

In order to be covered by the Longshoremen's and Harbor Workers' Compensation Act, an employee must be a "person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor worker including a ship repairman, shipbuilder, and shipbreaker". 33 U.S.C. § 902(3).[1] The Board, affirming the ALJ, found that Sacchetti was a shipbuilder engaged in maritime employment within the meaning of § 902(3) because his function was a necessary ingredient of and integral to the shipbuilding process. As we noted in *General Dynamics Corp. v. Director, Office of Workers' Compensation Programs,* 585 F.2d 1168, 1170 (1st Cir. 1978), "the Board's decision supporting the ALJ's application of a broad statutory term or phrase to a specific set of facts will be upheld if a reasonable factual and legal basis for it exists." In other words, even though the issue may be looked upon as largely legal in nature, a reviewing court should accord the Board's interpretation considerable deference. *See Cardillo v. Liberty Mutual Co.,* 330 U.S. 469, 478, 67 S.Ct. 801, 807, 91 L.Ed. 1028 (1947).

---

**1.** The Act also requires that the injury occur upon navigable waters or in an adjoining area used for loading, repairing or building vessels, 33 U.S.C. § 903(a). The satisfaction of this "situs" test is not at issue in this case.

The precise issue is whether an employee involved in the preliminary steps of the shipbuilding process—unloading the raw material and channelling it toward the fabrication shop—is sufficiently a part of the construction process to allow his coverage under the Act as a shipbuilder. The Act gives us no guidance, beyond the definition cited above, for determining the point beyond which an employee's activities are too remote from the shipbuilding process. The Board, however, correctly looked at whether the employee's function was a necessary ingredient in or an integral part of the construction process. *See Graziano v. General Dynamics Corp.*, 663 F.2d 340, 342 (1st Cir. 1981); *White v. Newport News Shipbuilding & Dry Dock Co.*, 633 F.2d 1070, 1074 (4th Cir. 1980); *Dravo Corp. v. Maxin*, 545 F.2d 374, 380 (3d Cir. 1976), *cert. denied*, 433 U.S. 908, 97 S.Ct. 2973, 53 L.Ed.2d 1092 (1977); *cf. Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 271, 97 S.Ct. 2348, 2361, 53 L.Ed.2d 320 (1977) ("integral part" is test for coverage as "longshoreman"); *Prolerized New England Co. v. Benefits Review Board*, 637 F.2d 30, 36 (1st Cir. 1980) (same), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3080, 69 L.Ed.2d 952 (1981).

Courts have recognized as integral functions those core shipbuilding activities such as the construction of the component parts of the vessel. *See Newport News Shipbuilding & Dry Dock Co. v. Graham*, 573 F.2d 167, 170 (4th Cir. 1978) (employee constructing reactor to be installed in submarine was integral part of construction process), *cert. denied*, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978); *Dravo Corp. v. Maxin, supra*, 545 F.2d at 380 (employee burning steel plates that would become bottoms and decks of barges performed integral function). At the other end of the spectrum, they have also viewed as integral such secondary activities as the maintenance of the equipment necessary for the construction of ships, *see, Newport News Shipbuilding & Dry Dock Co. v. Graham, supra*, 573 F.2d at 170, and the maintenance of shipyard buildings and grounds, *see Graziano v. General Dynamics Corp., supra*, 663 F.2d at 343.

The unloading and channelling of the raw steel could be seen either as the first step in the core construction process or as a support service similar to maintenance but more directly related to the construction functions. In either case, the tasks at issue are a necessary incident to the fabrication of a ship. Construction could not proceed without the receipt, storage, and issuance of the raw steel at the shipyard. *Cf. White v. Newport News Shipbuilding & Dry Dock Co., supra*, 644 F.2d at 1074. Not only are these tasks a necessary prerequisite to shipbuilding in a "but for" sense, but the handling of steel and issuing it to the fabrication shop must be so timed as to mesh with overall construction schedules. Sacchetti's activities were at least as integral as those of employees who maintain construction equipment and have been found to be maritime employees under the Act, and certainly more integral than those of a stone mason who repairs the shipyard's buildings, *see Graziano v. General Dynamics Corp., supra*, 663 F.2d at 343.

Moreover, Congress intended to create "a simple, uniform standard of coverage". *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 83, 100 S.Ct. 328, 338, 62 L.Ed.2d 225 (1979). While the exclusion of support employees providing clerical services is logical under the wording of the statute and maintains the desired simplicity of standard, such a goal would only be frustrated by disparate treatment of employees involved in the immediate and necessary fringe of the fabrication process and equipment maintenance employees. In sum, we find ample reasonable factual and legal bases for the Board's conclusion that Sacchetti was an individual engaged in maritime employment as a shipbuilder.

## EXTENT OF LIABILITY

Section 8(f) of the Act limits the liability of the employer when the employee has permanent partial disability that existed prior to the disability for which the employer is claiming, contributed to that disability, and was manifest to the employ-

**40**

er.[2] *See* 33 U.S.C. § 908(f); *Director, Office of Workers' Compensation Programs v. Potomac Electric Power Co.*, 607 F.2d 1378, 1382 (D.C.Cir.1979) (per curiam). This provision was designed to encourage employers to hire or continue to employ handicapped workers by ensuring that the employer would not have to compensate in full for a subsequently incurred permanent disability when that disability was attributable in part to a previously existing handicap. *See Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs*, 542 F.2d 602, 606 (3d Cir. 1976).

■ Petitioner argues primarily that Sacchetti's practice of smoking until ten years prior to the discovery of his cancer constitutes a qualifying prior permanent partial disability. To put petitioner's claim in the context of the policy of § 8(f), it must argue that, because Sacchetti had smoked up till ten years ago, a cautious employer would have been moved to discharge him because of the increased risks of disability illness and resultant compensation liability. We agree with the Board that smoking cannot become a qualifying disability until it results in medically cognizable symptoms that physically impair the employee. To apply the rule for limited liability to socially pervasive risks would require a new novel definition of "disability" and would broaden the rule beyond its intended scope. Although Congress may some day concern itself with discrimination against employees who present a high risk of disability, we do not think it did so when it passed § 8(f).

■ Petitioner contended alternatively at oral argument that Sacchetti developed chronic obstructive pulmonary disease (COPD) as a result of his smoking and that COPD was an existing permanent partial disability qualifying appellant for limited liability under § 8(f). This is an argument we cannot acknowledge because it was not put forth as a theory before the Benefits Review Board. Even if we were to over-

look this technicality, petitioner at argument was unable to point to evidence in the record showing that COPD was a *prior* permanent disability.

*The Board's decision is affirmed.*

ALDRICH, Senior Circuit Judge (concurring in result).

While I accept the result I cannot agree with the opinion in this case, which seems to rest upon a necessary function test which I view as no test at all. Everyone in a shipyard is necessary to its successful operation, or he or she would not be there. Without a gatekeeper to exclude undesirables and a nightwatchman to discover fire or marauders, or a janitor to repair the toilets, there might be serious interruption in business. And if the test is whether the shipbuilding process requires services that "mesh with overall construction schedules," the president's secretary who orders the raw material, and the inventory checker who discovers it has not arrived, are sine qua nons. Had Congress intended a necessary function test it would have been abundantly easy to say "employees of a stevedorer, shipbuilder and ship-repairer" and be done with it. It did not.

In the present circumstance I turn to the most recent advice from the Court, *P. C. Pfeiffer Co. v. Ford*, 1979, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225: A "trucker carrying cotton to Galveston [is not] engaged in maritime employment even though he is working on the marine situs." *Id.*, at 83, 100 S.Ct. at 338. Maritime employment, in other words, relates to the nature of the work as well as the situs. Thus in *White v. Newport News Shipbuilding & Dry Dock Co.*, 4 Cir., 1980, 633 F.2d 1070, cited by the court, the court said, at 1074,

"White's regular functions of affixing the color code and etching to the individual pieces of pipe for the purpose of identifying their respective grades to the ship fabricators effected a physical change to

---

**2.** If the requisite conditions are satisfied, the employer is responsible for compensation for the first 104 weeks, and a special fund is tapped thereafter. See 33 U.S.C. §§ 908(f), 944.

each piece of pipe and gave each an added characteristic essential to identify it by grade for its proper application and use by the fabricators in the construction by them of ships at the shipyard. Hence, White's performance of those functions on the pipe were the first steps taken physically to alter that pipe for its use in ship construction, and his doing so thus constituted an 'integral part' and necessary 'ingredient' of shipbuilding and also caused him to be 'directly involved' therein, as did his occasional cutting of pipe for ship construction."

This action marked a discernible point of shipbuilding involvement, causing situs to acquire an additional qualification.

This distinction seems supported by *P. C. Pfeiffer Co. v. Ford*, ante, but even more by *Northeast Marine Terminal Co. v. Caputo*, 1977, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320. There the Court stated that it was "clear that persons who are on the situs but are not engaged in the overall process of loading and unloading vessels[*] are not covered.... Also excluded are employees who perform purely clerical tasks and are not engaged in the handling of cargo." (Viz., the longshoreman's primary job). Yet if we are applying simply a necessary function test, checking clerks must be essential to the vessel's unloading.

*Ford* teaches us that the employee trucker who brings the material into the yard is not "engaged in maritime employment even though he is working on the marine situs," and I would say the same as to an employee who completes its journey by unloading it, necessary though that be. For this I would not qualify the claimant. On the other hand, I am content to say that he is covered because the shipbuilding process, in which he participated, includes the movement from storage to the machine shop.

---

* *See also, id.*, page 266 n.27, 97 S.Ct. 2358 n.27,    "engaged in ... building a vessel."