## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Daniel C. Turnista

v.

Chesapeake and Ohio RR. Co.

May 21, 1984

Case No. (Law) 8690-WS

By JUDGE J. WARREN STEPHENS

The court has reviewed the pleadings and argument, the evidence and the excellent memoranda.

Daniel C. Turnista (plaintiff) was injured at Newport News, Virginia, on April 19, 1982, and filed his Motion for Judgment against The Chesapeake and Ohio Railroad Company (defendant) on August 25, 1983, under the Federal Employer's Liability Act (FELA), 45 U.S.C. 51 *et seq.* Defendant filed its Special Plea to Jurisdiction (special plea) on September 15, 1983, asserting that plaintiff's sole and exclusive remedy against it is under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. 905(a). If defendant's contention is valid, then relief under LHWCA is plaintiff's exclusive remedy and the FELA action must be dismissed.

On March 28, 1984, at the time of the hearing on the special plea, the parties stipulated that:

(1) defendant is an "employer" as defined by 33 U.S.C. 902(4) of LHWCA at the time of plaintiff's accident;

(2) that plaintiff was then and there employed by defendant; and,

(3) that the injuries of which plaintiff complains occurred "upon the navigable waters of the United States" as defined by 33 U.S.C. § 903(a) of LHWCA.

The sole issue is whether the plaintiff at the time of his injuries was a person engaged in maritime employment as defined by 33 U.S.C. § 902(3) of LHWCA.

The facts are not in contention. The evidence disclosed that plaintiff, a machinist, was injured in a fall onto a barge while burning shackles loose with an acetylene torch as a part of the work required to replace the hood of the offshore coal loading tower on the south side of Pier 14. As a machinist in the mechanical department of defendant, plaintiff spent 50% or more of his working time between the coal loading dumper and the end of the piers, and, otherwise worked in a shop located between the dumper and Pier 14, primarily performing repair and maintenance on coal loading equipment.

The evidence further disclosed that in proceedings pending before U. S. Department of Labor, Office of Workers' Compensation Programs, defendant had paid plaintiff under LHWCA (as of time of hearing), compensation payments aggregating in excess of $29,500.00, and, that plaintiff (though disputing defendant's computation of weekly wage and length of disability) had not challenged coverage under said Act for injuries received on April 19, 1982.

Resolution of this issue comes down to whether the court is required to follow a decision of the Virginia Supreme Court rendered in 1977 or one of the United States Court of Appeals, Fourth Circuit rendered in 1980.

In a unanimous opinion of the United States Supreme Court in *Northeast Marine Terminal Co.* v. *Caputo*, 432 U.S. 249, 268, 97 L.Ed.2d 320, 335 (argued April 18, 1977; decided June 17, 1977), Justice Marshall stated:

> The language of the 1972 Amendments is broad and suggests that we should take an expansive view of the extended coverage. Indeed, such a construction is appropriate for this remedial legislation. The Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and

incongruous results." *Voris* v. *Eikel*, 346 U.S. 328, 333, 98 L.Ed. 5, 74 S.Ct. 88 (1953).

The Virginia Supreme Court decision in *White* v. *Norfolk and Western Railway Company*, 217 Va. 823, 232 S.E.2d 801 (1977), *cert. denied* 434 U.S. 860 (1977) was rendered on March 4, 1977, and held that *White* was not a covered "employee" within the meaning of the Act, saying at page 832:

> Applying the section 2(3) language defining "employee" in the light of what we perceive to have been Congress' purpose when the 1972 Amendments were adopted, we do not believe plaintiff's duties, in the electrical rooms where the injury allegedly occurred, had a realistically significant relationship to the (833) loading of cargo on ships. Stated differently, when plaintiff was injured he was not *directly involved* in the loading of coal. See *Jacksonville Shipyards, Inc.* v. *Perdue, supra,* 539 F.2d at 539.
>
> Plaintiff was not actually handling any cargo, either manually or mechanically, as was the case in the decisions principally relied on by N & W. Moreover, plaintiff was not manipulating (except to test) any of the controls of the electrical mechanism, which furnished the power for this automated loading process. Rather, he was only *maintaining* the electrical devices on the shore and attached to the pier, work which is not the traditional work of a ship's service employee. Plaintiff was at least one step removed from a realistically significant relationship and from a direct involvement with the loading of vessels. The mere fact some of plaintiff's cumulative injury was sustained out over the Elizabeth River, while he worked inside the electrical rooms of the Pier 6 shiploaders, does not convert his status from that of a railroad electrician to that of a maritime worker.

Thus, the Virginia Supreme Court (in opinion rendered by five justices), in effect, narrowly held that to be an "employee," *the plaintiff must have been directly involved in the loading of the coal* (emphasis supplied).

In *Price* v. *Norfolk and Western Railway Company*, 618 F.2d 105 (4th Cir. 1980), the Fourth Circuit held that a railroad employee injured while painting support towers for the gallery used for conveying grain (loading and unloading ships and barges and not for storage) as a part of routine maintenance for which Norfolk and Western was responsible was "an employee" within the meaning of LHWCA (33 U.S.C. § 902(3)). In concluding (page 1062) that "The Gallery involved here is just as essential to the actual loading and unloading of ships as the machine involved in Graham was to their building. . .," the opinion reviewed applicable decisions since *Northeast Marine Terminal*, at page 1061:

> We feel that our decision in *Newport News Shipbuilding & Dry Dock Co.* v. *Graham*, 573 F.2d 167 (4th Cir.), cert. denied, 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978), is controlling in this case and requires that we reverse the district court's holding that Price was not an employee within the meaning of the Act and therefore was entitled to recover under the FELA. In *Graham*, a claimant Jones was seeking compensation under the LHWCA for injuries sustained when he bumped against a machine which he was oiling. The machine was used in building ships. He was rated as a mechanic and belonged to the maintenance department of the employer. In holding that Jones was entitled to compensation under the LHWCA, we stated: "Because Jones's maintenance was essential to keeping the shipyard's machinery in working order for the construction of ships, we conclude that he was a shipbuilder within the meaning of the Act." Id. at 170.
>
> In so holding, we cited with approval a Benefits Review Board decision that is directly on point. In *Bradshaw* v. *McCarthy*, 3 BRBS 195 (1976), petition for review

denied, 547 F.2d 1161 (3d Cir. 1977), a mechanic injured his back in a terminal while removing a tire from a forklift he was repairing. The forklift was used to unload ships and to load freight cars, tractors, and trailers. In holding that the claimant was an employee as defined in the Act, the Board stated:

"Merely because a waterfront mechanic is not directly involved in the actual loading or unloading of cargo does not remove him from the coverage of the amended Act. The maintenance and repair of longshoring machinery equipment is essential to the movement of maritime cargo and, thus, such an employee's duties are included in the broad concept of maritime employment."

Id. at 198. We can discern no significant distinction between the repair of machinery essential to the movement of maritime cargo and the painting of a structure essential to the loading and unloading of the same. Nor can we discern any significant distinction between oiling a machine used in building ships, as was the claimant in *Graham*, and painting a structure used in loading and unloading ships. There is no doubt that employees employed in "taking cargo out of the hold, moving it away from the ship's side and carrying it immediately to a storage or holding area" are "employe(es)" within the meaning of the amended statute. *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 267, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977). The holding in *Graham* that a maintainer of a shipbuilder's machinery is covered requires a holding here that a maintainer of a longshoreman's machinery be covered.

We find no merit in the argument of plaintiff that the fact that the plaintiff was (1062) merely painting the structure housing the conveyor mechanism that transports the grain, rather than the mechanism itself, is sufficient to distinguish this

case from *Graham* and *Bradshaw*. The Gallery involved here is just as essential to the actual loading and unloading of ships as the machine involved in *Graham* was to their building. We should add at this point that we also find persuasive the direction of *Northeast Marine Terminal* that we take an "expansive view" of this "remedial legislation." 432 U.S. at 268, 97 S.Ct. at 2359.

It is apparent that the Fourth Circuit has adopted the expansive view that "maintenance and repair of longshoring machinery and equipment is essential to the movement of maritime cargo and, thus, such an employee's duties are included in the broad concept of maritime employment." Since *Northeast Marine Terminal*, the federal courts have consistently applied the "expansive view" in interpreting the meaning of a "person engaged in maritime employment" as that term is used in 33 U.S.C. § 902(3) of LHWCA, and, it appears no court has followed *White*.

Is *White* nevertheless binding upon this court under the principal of *stare decisis*? Neither *Graham* (decided March 13, 1978) nor *Price* (decided April 9, 1980) followed *White*, the latter expressly declining so to do saying (at page 1062) ". . . and with respect simply disagree with *White*." There is no suggestion in any of the memoranda that the precise question is now before the United States Supreme Court.

With *Northeast Marine Terminal* and its progeny *Graham* and *Price* binding on the Federal district courts, for this court to follow *White* would further frustrate lack of uniformity between federal and state court decisions governing the interpretation of the meaning of a federal statute (particularly affecting the Hampton Roads area where ship construction and repair, shipping and longshoring activities are commonplace), a result the court concludes is not intended by *White* in view of the subsequent decisions in *Graham* and *Price*. The court respectfully declines to follow *White*, concluding that *Price* is controlling.

The court is of the opinion that at the time of his injury, plaintiff was engaged in maritime employment, and, thus was an "employee" within the meaning

of 33 U.S.C. § 902(3) of LHWCA and that his exclusive remedy against defendant is under LHWCA.

Accordingly, the court concludes that plaintiff is precluded from maintaining subject FELA action and that defendant's special plea is sustained and the action of plaintiff is dismissed from the docket with prejudice to plaintiff.

Having so concluded, it is not necessary to reach the issue of what, if any, effect plaintiff's acceptance of compensation payments from defendant under LHWCA has on his right to maintain the FELA action.