NANCY J. SCHWALB

V.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY

Record No. 841743

WILLIAM MCGLONE

V.

THE CHESAPEAKE AND OHIO RAILWAY COMPANY

Record No. 850728

March 4, 1988

Present: All the Justices

28

*(Michael L. Weiner; Frances S. P. Li; William W. Nexsen; De Parcq, Perl, Honegs, Rudquist & Koenig, P.A.; Stackhouse, Rowe and Smith, on briefs), for appellant).* Appellant submitting on brief. (Record No. 841743)

*(Richard Wright West; West, Stein, West & Smith, P.C., on brief), for appellee).* Appellee submitting on brief. (Record No. 841743)

*C. Gerard Thompson (Moody, Strople and Lawrence, on briefs), for appellant.* (Record No. 850728)

*Richard Wright West (Douglas W. McCartney; West, Stein, West & Smith, P.C., on brief), for appellee.* (Record No. 850728)

POFF, J., delivered the opinion of the Court.

In this appeal, we review two judgments entered in separate actions, each sustaining a plea to the jurisdiction. Claiming damages for personal injuries, each plaintiff had invoked the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 (1982) (FELA). In each appeal, the sole issue is whether the plaintiff was a statutory employee as defined in the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 (1982) (LHWCA or the Act). If so, the parties agree that the remedy provided by the Act is exclusive, *see* 33 U.S.C. § 905(a) (1982), and that we should affirm the judgments.

The two plaintiffs are Nancy J. Schwalb and William C. McGlone. Each was an employee of the defendant, The Chesapeake and Ohio Railway Company. Although the accidents resulting in the plaintiffs' injuries occurred at different times, the facts in the two cases, insofar as relevant to the issue common to the two appeals, are substantially identical. Each plaintiff was employed as a laborer to perform housekeeping and janitorial services in the offices, shops, bathrooms, and other places situated on the defendant's pier and adjacent property in Newport News. This property is equipped with facilities designed to transfer coal from railroad cars to ships moored at the pier. A "dumper", activated by "trunnion rollers", upends railroad cars and dumps the coal into "hoppers". The coal falls from the hoppers onto conveyor belts that carry it to a "loading tower" from which it is poured into the hold of a ship.

Coal spilled on the trunnion rollers can cause the dumpers to malfunction. Coal falling and accumulating beneath the conveyor belts eventually may damage the belts and interrupt the loading process. As part of the duties assigned by the defendant, the plaintiffs were required to clear away coal spilled in these areas. Because they were not members of a longshoremen's union, the plaintiffs were forbidden to load that coal onto the conveyor belts. The plaintiff McGlone was clearing away coal beneath a conveyor belt at the time he was injured. The plaintiff Schwalb was injured in a fall as she was walking along a "catwalk" approaching the trunnion rollers.

The parties in both cases agree that the defendant railroad is a statutory employer as defined in the LHWCA, that is, an employer "any of whose employees are employed in maritime em-

ployment, in whole or in part". 33 U.S.C. § 902(4) (1982). The plaintiffs' contention is that the trial courts erred in ruling that they were statutory employees as defined in the Act. The plaintiffs rely upon our decision in *White* v. *N. and W. Ry. Co.*, 217 Va. 823, 232 S.E.2d 807, *cert. denied*, 434 U.S. 860 (1977). Reviewing a judgment based on such a ruling, we applied the Act as amended in 1972, Pub. L. No. 92-576, 86 Stat. 1251, to the facts in *White*. First enacted in 1927, Pub. L. No. 69-803, 44 Stat. (part 2) 1424, the LHWCA was the first successful congressional response to the Supreme Court's decision in *Southern Pacific Co.* v. *Jensen*, 244 U.S. 205 (1917). There, the Court had ruled that a state workers' compensation act could not constitutionally apply to a longshoreman injured in an accident that had occurred on a gangplank between a pier and a ship. Initially, Congress sought to authorize states to extend their workers' compensation statutes seaward of the *Jensen* line, but the Court held the state statutes to be unconstitutional delegations of congressional power. *Knickerbocker Ice Co.* v. *Stewart*, 253 U.S. 149 (1920); *Washington* v. *W.C. Dawson & Co.*, 264 U.S. 219 (1924).

Although the federal Act filled a workers' compensation void, the LHWCA, as originally enacted, provided coverage only when "disability or death result[ed] from an injury occurring upon the navigable waters of the United States". 33 U.S.C. § 903(a) (1927). Federal compensation coverage stopped at the *Jensen* line; the Act did not apply to a longshoreman injured at work on a pier, even though engaged in traditional longshoremen's functions. *Nacirema Operating Co.* v. *Johnson*, 396 U.S. 212, 218-20 (1969).

The 1972 amendments to the LHWCA moved the *Jensen* line landward to include areas adjoining navigable waters and "customarily used by an employer in loading, unloading, repairing, or building a vessel". 33 U.S.C. § 903(a) (1982). Yet, Congress did not extend federal coverage to every worker injured in such areas, for it added an amendment defining a covered employee as "any person engaged in maritime employment". 33 U.S.C. § 902(3) (1982). The effect of the two amendments was to create a two-pronged coverage test — the situs of the injury and the status of the injured worker.

In *White*, a railroad employee filed a claim under FELA. He had been injured on a situs covered by the LHWCA, and "the critical question presented . . . [was] whether plaintiff was a 'per-

son engaged in maritime employment' and thus an 'employee' within the meaning of the Act." 217 Va. at 827, 232 S.E.2d at 809. White was hired as an electrician to maintain and repair the electrical equipment used at a pier to dump coal from railroad cars, to move conveyor belts transporting the coal, and to load the coal into ships. Although White did not operate any of the equipment employed in the loading process, the railroad argued that "all of his activity was 'functionally related' to the loading of coal on ships", *id.* at 831, 232 S.E.2d at 812, and that he was, therefore, an employee engaged in maritime employment and, as such, was limited to the remedy provided by the LHWCA.

In *White*, the railroad had borrowed the "functional relationship" formula from the opinion in *Sea-Land Service, Inc.* v. *Director, Office of Workers' Compensation*, 540 F.2d 629, 637-38 (3d Cir. 1976). Considering the history of the Act and construing the congressional intent underlying the 1972 amendments, we rejected that formula. We adopted, instead, the standard articulated in *Weyerhaeuser Co.* v. *Gilmore*, 528 F.2d 957, 961 (9th Cir.), *cert. denied*, 429 U.S. 868 (1976):[1]

> [F]or an injured employee to be eligible for federal compensation under [the Act], his own work and employment, as distinguished from his employer's diversified operations, including maritime, must have a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters,' with the further condition that the injury producing the disability occurred on navigable waters or adjoining areas as defined in § 903.

Applying the *Gilmore* standard, we said that "we do not believe plaintiff's duties . . . had a realistically significant relationship to the loading of cargo on ships", that "plaintiff was not a covered

---

[1] The Supreme Court disapproved application of a significant relationship standard to determine the status of the worker in *Director, OWCP* v. *Perini North River Associates*, 459 U.S. 297, 302 n.8, 318-19 (1983). The Court did not, however, disapprove a significant relationship standard as a concept when applied, as in *Gilmore*, to post-1972 coverage landward of the *Jensen* line. As noted by the majority in *Herb's Welding, Inc.* v. *Gray*, 470 U.S. 414, 424 n.10 (1985) (quoting *Perini*, 459 U.S. at 299, 324 n.34) the decision in *Perini* "was carefully limited to coverage of an employee 'injured while performing his job upon actual navigable waters' . . . [and] was, 'of course,' limited to workers covered prior to 1972".

'employee' within the meaning of the Act", and that "the order dismissing plaintiff's FELA action will be reversed". 217 Va. at 832-33, 232 S.E.2d at 813.

In the appeals at bar, the defendant railroad relies on *Price* v. *Norfolk & W. Ry. Co.*, 618 F.2d 1059 (4th Cir. 1980). There, the plaintiff in an FELA action was a painter employed by the defendant railroad. He sustained an injury while painting the support towers of a structure housing a conveyor belt system used in loading grain into the hold of a vessel. The *Price* court reasoned that, because "the failure to paint would eventually lead to severe rusting that would halt the entire [loading] process", *id.* at 1062 n.4, the plaintiff was engaged in maritime employment and, consequently, "was an 'employee' within the meaning of the LHWCA which provides an exclusive remedy", *id.* at 1062.

We cannot agree that Congress intended the 1972 amendments to have such pervasive and preclusive effects. Nor do we agree with the argument advanced by the railroad in these appeals that the Supreme Court implicitly has overruled our decision in *White*. On brief, the defendant says that "the U.S. Supreme Court has stated that one is engaged in maritime employment if he is 'engaged in the *overall* process of loading and unloading vessels' (emphasis supplied)." For this proposition, the defendant cites *Northeast Marine Terminal Co.* v. *Caputo*, 432 U.S. 249 (1977). The language the defendant quotes from that decision is an abbreviated excerpt lifted from a longer passage, the import of which we construe differently.

The injuries at issue in *Caputo* were sustained during the process of unloading a ship. Considering the reports of the congressional committees that initiated the 1972 amendments, the Court concluded that Congress intended

> to cover those workers involved in the *essential elements* of unloading a vessel — taking cargo out of the hold, moving it away from the ship's side, and carrying it immediately to a storage or holding area. . . . [P]ersons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered. Thus, employees such as truckdrivers, whose responsibility on the waterfront is essentially to pick up or deliver cargo unloaded from or destined for maritime transportation are not covered. Also excluded

are employees who perform purely clerical tasks and are not engaged in the handling of cargo.

*Id.* at 267 (emphasis added). As we construe this language, the Court reasoned that, although clerical employees working on a covered situs may have responsibilities related to the commercial process, unless they are "engaged in the handling of cargo", they are not "involved in the essential elements of [loading or] unloading a vessel" and, therefore, are not statutory employees for purposes of the LHWCA. *Id.*

We recognize that the Act is remedial in purpose and, as the defendant says, that "*Caputo* requires an expansive view of LHWCA". We note, however, that the Court speaks of covered workers as those "involved in the essential elements of unloading a vessel", *id.*; as those "directly involved in the loading or unloading functions", *id.* at 271 (quoting S. Rep. 1125, 92d Cong., 2d Sess. 13 (1972) and H.R. Rep. 1441, 92d Cong., 2d Sess. 11 (1972)); and as those who "spend at least some of their time in indisputably longshoring operations", *id.* at 273. Two years following *Caputo*, the Court said that "workers doing tasks traditionally performed by longshoremen are within the purview of the 1972 Act." *P. C. Pfeiffer Co.* v. *Ford*, 444 U.S. 69, 82 (1979). And the Supreme Court, recalling the language of *Caputo*, emphasized in its most recent analysis of the status test that the purpose of the maritime employment requirement was "to cover those workers on the situs who are involved in the *essential elements* of loading and unloading". *Herb's Welding, Inc.* v. *Gray*, 470 U.S. 414, 423 (1985) (emphasis added).

We believe the "essential elements" standard is more nearly akin to the "significant relationship" standard we adopted in *White* than the "overall process" construction invoked by the defendant. In this respect, we see no logical difference between workers "who perform purely clerical tasks", *Caputo*, 432 U.S. at 267, and workers who perform purely maintenance tasks, such as painting, or workers who, like the plaintiffs in these appeals, perform purely housekeeping and janitorial tasks.

Applying the rule in *White*, we hold that the plaintiffs were not statutory employees as defined in the LHWCA. We will re-

verse the judgments dismissing the plaintiffs' FELA actions and remand the cases for trials on the merits.[2]

Record No. 841743 — *Reversed and remanded.*
Record No. 850728 — *Reversed and remanded.*

---

[2] In the Schwalb appeal, the defendant argues that the plaintiff "is estopped from denying LHWCA coverage" because she accepted compensation paid under the Act. According to the defendant's brief, "[s]he expresses no agreement to off-set compensation payments previously received against any recovery under FELA and, therefore, double recovery remains a possibility." But, in a memorandum of law filed in the trial court, we find that the plaintiff acknowledged that "any recovery by plaintiff on her FELA claim will be reduced by the amount of LHWCA benefits she may have already received." A railroad worker who makes such a concession does not seek a double recovery and is not precluded from pursuing a remedy under FELA. *Freeman* v. *Norfolk and Western Ry. Co.*, 596 F.2d 1205, 1208 (4th Cir. 1979); *accord Caldwell* v. *Ogden Sea Transport, Inc.*, 618 F.2d 1037, 1049 (4th Cir. 1980).