NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,

v.

Bernice W. HARRIS, Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,

v.

Robert H. BATEMAN, Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,

v.

Charles BURCH, Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

Nos. 90–2008, 90–2014 and 90–2015.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1990.

Decided May 31, 1991.

Lawrence Philip Postol, argued, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for petitioner.

Michael Scott Hertzig, Office of the Solicitor, U.S. Dept. of Labor, argued, Washington, D.C. (Robert P. Davis, Solicitor of Labor, Carol A. DeDeo, Associate Solicitor, J. Michael O'Neill, Counsel for Longshore, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., P. Scott DeBruin, Pattern, Wornum & Watkins, Newport News, Va., on the brief), for respondents.

Before WIDENER and WILKINS, Circuit Judges, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.

HOUCK, District Judge:

This is an appeal by the Newport News Shipbuilding and Dry Dock Company (Company) from a ruling of the Benefits Review Board (Board) in three consolidated cases. The only issue is whether the special fund created under section 8(f) of the Longshoremen's and Harbor Workers' Compensation Act (Act), 33 U.S.C. § 908(f), should pay a portion of the compensation due to the claimants for their post-retirement disability caused by an occupational disease but aggravated by a pre-existing permanent partial disability. The Board held that the Company was not entitled to relief from the special fund because the pre-existing conditions of these claimants were not "manifest" to the employer during their periods of employment. The Company maintains that the manifestation requirement that has been judicially read into section 8(f) should not be extended to the area of post-retirement occupational diseases. We agree and reverse.

I.

Bernice W. Harris (Harris), Robert H. Bateman (Bateman), and Charles Burch

(Burch) were all employed by the Company for periods of seven years or more. Following retirement each developed illnesses unrelated to their previous employment with the Company and then, several years later, each was diagnosed as having an occupational disease.[1] In each case the pre-existing medical conditions of the claimants contributed to and aggravated the disability resulting from the occupational disease.[2]

■ The Company sought relief from the special fund established by section 44 as provided for by section 8(f) of the Act. The Administrative Law Judge (ALJ) denied the relief requested, finding in each case that the Company failed to meet the manifestation requirement of the Act.[3] The Board affirmed on the same basis.

"[T]he Benefits Review Board is not a policymaking agency; its interpretation of the [Longshoremen's and Harbor Workers' Compensation Act] thus is not entitled to any special deference from the courts." *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). On appeal from a decision of the Board this court is charged with reviewing that decision "only for errors of law including whether the Board has used the proper standard of review in considering the hearing officer's decision." *Amigo Smokeless Coal Co. v. Director, Office of Workers' Compensation Programs*, 642 F.2d 68, 69 (4th Cir.1981). The issue herein raised by the Company is clearly one of law, and there is no contention that the Board did not adhere to the applicable scope of review in reviewing the ALJ's decision.

### A.

Section 8(f) of the Act includes the following pertinent provisions:

(1) In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide compensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury.... In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only.

In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation for one hundred and four weeks only.

(2)(A) After cessation of the payments for the period of weeks provided for herein, the employee or his survivor entitled to benefits shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title....

---

**1.** Harris was diagnosed with mesothelioma, caused by asbestos exposure while working for the Company. Bateman and Burch were diagnosed with asbestosis, also caused by exposure to asbestos while working for the Company.

**2.** In the actions *sub judice* it is clear that the preexisting conditions of the claimants were not manifest during the period of employment, but were manifest prior to the development of the occupational diseases suffered by these claimants.

**3.** The manifestation requirement places on the employer the burden of showing that at the time of hiring or during the period of employment the employee suffered from some existing medical disability or handicap that predated any occupational injury and contributed to or aggravated the occupational injury. It is not required that the employer have actual knowledge of the preexisting condition, only that the knowledge of the pre-existing condition be available to the employer when the period of employment begins or at some point during the period of employment, for example from existing medical records. *See Lambert's Point Docks, Inc. v. Harris*, 718 F.2d 644 (4th Cir.1983).

33 U.S.C. § 908(f). In effect, "[s]ection 8(f) ... provides that when an employee becomes permanently ... disabled or dies following an injury, and a pre-existing permanent partial disability contributed to the permanent ... disability or death, the employer shall pay compensation for only 104 weeks, and the remainder of the compensation is paid from a special fund set up under section 44 of the Act." *Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding and Dry Dock Co.*, 676 F.2d 110, 112 (4th Cir. 1982). The fund provided for by sections 8(f) and 44 of the Act is commonly referred to as the second injury fund.

Prior to the 1984 Amendments to the Act there were no provisions within the Act for recovery for post-retirement occupational diseases. If the occupational disease did not occur prior to retirement, the employee could not receive benefits. The amendments of 1984 provided, *inter alia*, for benefits to employees who developed occupational diseases after retirement from the covered work. This was changed primarily through the addition of section 10(d)(2) to the Act.[4]

In this appeal the wisdom of the manifestation requirement previously adopted by this court is not questioned. Our sole focus is on whether the manifestation requirement should be extended to the area of post-retirement occupational diseases, and this is an issue of first impression with this court.

### B.

■ The manifestation requirement of section 8(f) was first adopted by this court in the case of *Director, Office of Workers' Compensation Programs v. Newport News Shipbuilding and Dry Dock Co.*, 676 F.2d 110, 112 (4th Cir.1982). In doing so we joined the majority of courts who had considered the issue. *But see American Ship Bldg. Co. v. Director, Office of Workers' Compensation Programs*, 865 F.2d 727 (6th Cir.1989) ("enforcement of statute

as written—free of an employer knowledge requirement—best accomplishes the stated purpose of Congress").

In *Newport News* we explained by way of footnote our rationale in adopting the manifestation requirement, saying, "[t]he requirement that the pre-existing disability be manifest to the employer is not statutory, but was imposed judicially to implement the congressional intent to discourage discrimination in hiring and retaining handicapped workers." *Newport News*, at 114 n. 5. We further recognized "that the existing permanent partial disability must have been manifest to the employer prior to the injury that is the basis for the claim in order for the discrimination to occur." *Id.*

Subsequently in *Lambert's Point Docks, Inc. v. Harris*, 718 F.2d 644 (4th Cir.1983), we expanded on our reasoning in adopting the requirement. There we said:

This section operates to shift liability for compensating the injured employee in so-called second injury cases from the employer to a special fund, established under 33 U.S.C. § 944, after the employer has provided compensation for a certain number of weeks.

One of the major purposes of the second injury fund is the prevention of employer discrimination against previously disabled, or partially disabled, handicapped workers. *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201, 69 S.Ct. 503, 504, 93 L.Ed. 611 (1949). By limiting an employer's liability, sections 908(f) and 944 remove a substantial disincentive from hiring workers with an increased risk of total disability.

The scope of this limitation of liability is itself limited by its underlying purpose. Not all pre-existing conditions, but only those that are manifest at the time of the employment, will serve to limit an employer's liability. A pre-existing condition that is not manifest cannot serve to limit the employer's liability. *Dilling-*

---

**4.** Section 10(d)(2) is not the only new or amended section of the Act which impacts on post-retirement latent occupational diseases, however,

it does appear to be the core section which extends benefits in these situations.

*ham Corp. v. Massey*, 505 F.2d 1126, 1128 (9th Cir.1974). This point of law is not contested.

*Id.* at 648.

Like a number of other circuits, this court relied on the holding in *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611 (1949), in concluding that the original injury must be manifest to the employer prior to the second employment related injury.[5] *Suwannee* is most often cited for the proposition that the primary purpose of a second injury fund is to promote the hiring of the handicapped and disabled. It is less often mentioned that *Suwannee* also notes as a second purpose of the second injury fund the protection afforded the employer by the fund. In *Suwannee* the court gave great weight to the testimony of a witness given at a hearing on provision 8(f) who used the example of the one-eyed worker in saying that the section would protect the "worker with one eye from being denied employment on account of his being an extra risk." *Suwannee*, at 202, 69 S.Ct. at 505. What is often overlooked about this witness' testimony is that he also commented on the protection afforded the employer by section 8(f). The testimony of that witness, as quoted by the court in *Suwannee*, reads in full as follows:

> The second injury proposition is as much to the advantage of the employer and his interests as it is for the benefit of the employee. It protects that employer who has hired, say, a one-eyed worker who goes and loses his other eye and becomes a total disability. The employer without this sort of thing would have to pay total permanent disability compensation. Then, on the other hand, this also protects the worker with one eye from being denied employment on account of his being an extra risk. *Now, simply taking this up in this way it is possible to protect both the employer and to protect the one-eyed employee also.*

*Id.* at 202, 69 S.Ct. at 505 (emphasis added).

It cannot be contested that the most recognized purpose of section 8(f) is to encourage the hiring of the disabled and handicapped. However, the second goal of the section, to provide protection to the employer, should not be overlooked.

The legislative history of the 1984 amendments also sheds some light on the issue now under consideration. It states that the amendments as a whole are "intended to reduce the cost of Longshore coverage for employers in the covered industries in a manner which will disturb, to the most limited extent possible, the rights and benefits which the Longshore Act provides." H.Rep. No. 570, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 2734, 2736. Additionally, the amendments relating to post-retirement occupational diseases are meant "to insure that long-latency occupational disease claimants do not continue to encounter the severe procedural hurdles which the Longshore Act has presented in the past. It is the committee's intent, further, to insure that these disease victims receive compensation benefits which are adequate to their current needs." H.Rep. No. 570, 98th Cong., 2d Sess. 10, *reprinted in* 1984 U.S. Code Cong. & Admin.News 2734, 2743. When these goals are considered in concert, it is clear that Congress meant for the 1984 amendments to insure that those suffering from long-latency occupational diseases receive benefits adequate to their needs without greatly increasing the cost of these benefits to the immediate employer by spreading the risk throughout the industry and defraying the increased costs by contributions to the fund.

There is no suggestion that the relevant 1984 amendments are intended, to any extent whatsoever, to encourage the hiring or continued employment of the handicapped. As the petitioners properly point out in

---

5. *See American Mut. Ins. Co. v. Jones*, 426 F.2d 1263, 1267 (D.C.Cir.1970); *Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 542 F.2d 602, 606 (3d Cir.1976); *Eq-uitable Equipment Co. v. Hardy*, 558 F.2d 1192, 1196–1197 (5th Cir.1977); *Dillingham Corporation v. Massey*, 505 F.2d 1126, 1128 (9th Cir. 1974).

their brief, the classic case involving the 1984 amendments is that of the employee who retires and then, as he ages, develops high blood pressure, diabetes, heart problems, or other ailments as part of the normal aging process. The retiree then develops the occupational disease, and it results in a disability greater than it would have if the other illness had not already occurred. In such cases the manifestation requirement serves no useful purpose. To the contrary, adherence to the requirement would defeat the real purposes of the amendments.

"Our task is to interpret the statute as best we can, not to second guess the wisdom of the congressional policy choice." *Mansell v. Mansell,* 490 U.S. 581, 594, 109 S.Ct. 2023, 2031, 104 L.Ed.2d 675 (1989). In fulfilling this task we have looked carefully at both the wording of the Act and its legislative history, both recent and past. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). We are convinced that section 8(f) should be read literally in considering disability from post-retirement occupational diseases. Only in this way can Congress' intent in passing the 1984 amendments be carried out. To establish entitlement to relief from the special fund for a post-retirement occupational disease, therefore, the employer need only show that there is an existing permanent partial disability and that a pre-existing disability combined with the same and contributed to the resulting permanent total disability. In such cases the manifestation requirement will not be applied.

## II.

■ The Director has raised the argument that the time of injury is the last date upon which the claimant was exposed to the hazard which caused his disease, *i.e.* the last date of employment. The court cannot agree with this position.

Section 10 of the Act, 33 U.S.C. § 910, deals with the determination of pay. For purposes of that section "the time of injury [is] deemed to be the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability." 33 U.S.C. § 910(i).

Since the issue before the court is how long the employer is going to have to pay the amount determined to be due under section 10, it necessarily follows that the definition of time of injury found therein would be used for the purposes of section 8(f). We hold that the date of injury for purposes of determining whether the employer is entitled to relief from the special fund is determined according to the provisions of section 10(i) of the Act. To conclude otherwise would thwart the purpose of the amendments.

For the reasons stated above we reverse the holdings of the Board and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.