**CNA INSURANCE COMPANY,**
**Carrier, Petitioner,**

**v.**

**Harry LEGROW, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

**No. 90–1520.**

United States Court of Appeals, First Circuit.

Heard Nov. 9, 1990.

Decided June 5, 1991.

---

Joseph S. Buckley, Jr. with whom Morrison, Mahoney & Miller was on brief, for carrier, petitioner.

Marianne Demetral Smith, Attorney, U.S. Dept. of Labor, Office of the Sol., with whom Robert P. Davis, Sol. of Labor, Carol A. De Deo, Associate Sol., and Janet R. Dunlop, Counsel for Longshore, were on brief for respondents.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and CAFFREY,** Senior District Judge.

JOHN R. BROWN, Senior Circuit Judge:

CNA Insurance Company, as Longshore and Harbor Workers' Compensation Act (LHWCA) insurance carrier for the employer, Taylor Associates (hereafter collectively Taylor), petitions for review of a Decision and Order of the Benefits Review Board (Board). The Board reversed the holding of the ALJ that (1) claimant Harry W. Legrow sustained a 50 percent permanent partial disability, and that (2) Taylor was entitled to relief for preexisting disability under § 8(f) of the LHWCA, 33 U.S.C. § 908(f). The Board found that (1) Legrow sustained a permanent total disability, and (2) Taylor was not entitled to relief under § 8(f). Taylor brings this appeal under 33 U.S.C. § 921(c). We affirm.

### Oh, My Aching Back

Taylor is a reinforcing steel erection company. At the time of the events important to this appeal, Legrow's work with Taylor called for him to lift objects averaging be-

---

* Of the Fifth Circuit, sitting by designation.

** Of the District of Massachusetts, sitting by des-ignation.

tween 100 and 150 pounds. Legrow's wages were in the range of $900 a week.

On November 28, 1984, Legrow slipped on some damp earth and wrenched his back while performing duties as a "working foreman in the field" for Taylor. The resulting injury left him unable to engage in heavy lifting. Legrow continued to work, performing only supervisory functions, until December 7, 1984. He returned to Taylor in May 1985 to perform clerical duties on a part-time basis. In the fall of 1985, Legrow tried to return to work as a foreman, but after three hours of manual labor began to experience severe back pain and had to stop.

Legrow had injured his back on several occasions before the 1984 injury. Legrow first injured his back in 1968, while working for another employer, and was forced to remain absent from work for one and a half years. In 1978, eight years after he began working for Taylor as an ironworker, another back injury caused him to miss three months of work. In 1983, a lower back strain resulted in his absence from work for almost five months. After recovering from each injury, Legrow resumed the full range of duties required by the job. In testimony Legrow maintained that he did not sustain any permanent injury. The record medical reports confirm this assertion.

### The Disability Lingers On

Legrow did not completely recover from the November 1984 injury, however. Legrow's treating physician, Dr. Edwin Guiney, testified that the back injury left Legrow 50 percent disabled, which prevents Legrow from engaging in all but sedentary employment. Legrow cannot tolerate sitting or standing for longer than four or five hours at a time. Dr. Guiney recommended that Legrow refrain from rigorous physical activity, lifting of anything weighing more than five pounds, and bending forward.

After his 1984 injury, Legrow continued to perform light clerical duties for Taylor on an as-needed basis at a rate of $5 per hour. In this capacity, he typically answered the telephone and occasionally made bids on jobs on behalf of the company. To some extent, he could set his own hours, limited as they were to approximately ten hours a week when Taylor needed his assistance. To ease Legrow's discomfort, Taylor also provided Legrow with a mattress in his office so that he could lie down if his back began to bother him. Legrow also worked with some unidentified concern at an undisclosed wage, for similarly undisclosed hours, full-time as a security guard from July through October 1986. These two jobs represent all of his gainful employment since the 1984 injury.

### Seeking LHWCA Help

Legrow filed a timely claim for LHWCA disability benefits against Taylor and CNA. After a formal hearing, the ALJ found that (1) Legrow had sustained not a total permanent, but a 50 percent permanent partial disability, and (2) Taylor qualified for relief under § 8(f) of the LHWCA. See 33 U.S.C. § 908(f). On appeal taken by the Director of the Office of Workers' Compensation Programs, the Board reversed these two findings. The Board held (1) that Taylor, failing to sustain its burden of showing the availability of suitable alternative employment for Legrow, did not overcome the presumption of total permanent disability. Further, the Board found (2) that Taylor was not entitled to § 8(f) relief because it did not make the requisite showing that Legrow had a preexisting back disability which contributed to the disability resulting from the 1984 injury.

### How Do We Decide?

33 U.S.C. § 921(c) provides the jurisdictional grant for court appellate review. Reversal is warranted only if either the ALJ's findings of fact are unsupported by substantial evidence in the record considered as a whole, or if the decision is contrary to law. 33 U.S.C. § 921(b)(3). Our review of this case, therefore, requires that we independently examine the record to determine whether substantial evidence supports the ALJ's findings, as well as the legal correctness of the Board's conclu-

434

sions. *See Randall v. Comfort Control, Inc.*, 725 F.2d 791, 796 (D.C.Cir.1984); *Stevenson v. Linens of the Week*, 688 F.2d 93, 97 (D.C.Cir.1982). We may reverse the Board if we determine that it erred in finding that the evidence underlying the ALJ's finding did not constitute substantial evidence. *Air America, Inc. v. Director, OWCP*, 597 F.2d 773, 778, 780 (1st Cir. 1979). This is a pure question of law whereby we make certain that the Board adhered to its statutory standard of review of the ALJ.

### Disability—Total or Partial, Temporary or Permanent

■ The definition of "disability" under the LHWCA encompasses a recognition of the potential economic as well as the medical effects of an injury. *See id.* at 777; *C & P Telephone Co. v. Director, OWCP*, 564 F.2d 503, 512 (D.C.Cir.1977). Disability is the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10).

■ A three-part test has been established to determine whether a claimant qualifies for a total disability award. A claimant makes a prima facie case of total disability by showing he cannot perform his former job because of job-related injury. The burden then shifts to the employer to establish that suitable alternative employment is readily available in the employee's community for individuals with the same age, experience, and education as the employee. The employer meets its burden only by proving that "there exists a reasonable likelihood, given the claimant's age, education, and background, that he would be hired if he diligently sought the job." *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031 (5th Cir.1981). *Accord Trans–State Dredging v. Benefits Review Board*, 731 F.2d 199, 201 (4th Cir. 1984). A claimant can rebut the employer's showing of suitable alternative employment with evidence establishing a diligent, yet unsuccessful, attempt to obtain that type of employment. *Rogers Terminal v.*

*Director, OWCP*, 784 F.2d 687, 691 (5th Cir.1986).

■ *Turner* declares that "job availability should depend on whether there is a reasonable opportunity for the claimant to compete in a manner normally pursued by a person *genuinely* seeking work with his determined capabilities." 661 F.2d at 1043 (emphasis in original). Taylor asserts that it satisfied its burden to prove the availability of suitable alternative employment by showing that Legrow continued to do office work for Taylor on a part-time, as-needed basis, and by pointing out that Dr. Guiney, Legrow's physician, indicated in his report that Legrow had worked for several months as a security guard. Reversing the ALJ, the Board concluded that Legrow's part-time work for Taylor constituted sheltered employment, and thus was not suitable alternative employment. It reached this conclusion upon considering that Legrow performed the job only on an as-needed basis, averaging only approximately ten hours per week at the job, and he had a mattress in the office so that he could lie down during the day. The Board held that these conditions do not support a conclusion that Legrow reasonably could compete on the open labor market for a position comparable to his former job. We agree with the Board's determination that the ALJ could not find Legrow's clerical work at Taylor to be suitable alternative employment. Furthermore, the limited terms and conditions of this job prevent its supporting Taylor's argument that suitable alternative employment existed in the community.

Nor can reliance on Legrow's brief stint as a security guard satisfy Taylor's burden. First, Taylor failed to provide any evidence concerning the precise nature, terms, and availability of the job, or even the identity of the employer. Further, the record is silent as to why Legrow did not continue in the position. More importantly, nothing in the record suggests that Legrow was able to perform the job adequately. All we know is that Legrow did this work for a specified period. Just what it paid, what the duty hours were, whether it was physically demanding, or whether it re-

quired walking, standing, or sitting are a record mystery.

█ The employer has the burden of showing, not only the availability, but also the *suitability* of employment opportunities for the claimant. Focusing on this aspect, the Board correctly concluded that neither job constituted suitable employment. *See Haughton Elevator Co. v. Lewis,* 572 F.2d 447, 450–51 (4th Cir.1978) (finding claimant's current employment unsuitable because it was not consistent with his physical limitations). We need not, therefore, engage in any factual speculation, because the employer falls short of the threshold of evidence that it must present to overcome Legrow's proof of total disability and the legal presumption in Legrow's favor.

Alternatively, Taylor, relying on *Air America, Inc. v. Director, OWCP,* 597 F.2d 773 (1st Cir.1979), asserts that the well-established burden of showing suitable employment should not apply to this case. In *Air America,* the claimant contracted tropical sprue while working as a pilot in Southeast Asia, a disease which left him with varying degrees of numbness in his limbs and extremities. As a result, he could no longer work as a pilot. He did, however, possess a wide range of skills that made him employable in a variety of fields. We observed that if "medical impairment affects only a specialized skill that is necessary in [the claimant's] former employment, his resulting inability to perform that work does not necessarily indicate an inability to perform other work, not requiring that skill, for which his education and work experience qualify him." *Id.* at 779.

This case, however, is a long way from *Air America.* Although Legrow has a bachelor's degree in business administration, as well as prior office experience in addition to his managerial employment with Taylor, evidence of his efforts with the ten-hour a week office job with Taylor justified the Board's determination that the ALJ could not find that Legrow has any real ability to work in a typical office setting. As this Court stated in *Air America,*

the standards of that case are inapplicable where "the claimant's medical impairment and job qualifications [are] such that his suitable job prospects would be expected to be very limited, if existent at all." *See id.* at 780.

We therefore agree with the Board's legal conclusion that the ALJ could not find that Taylor sustained its burden to show suitable alternative employment, and thus affirm the Board's award of total permanent disability benefits.

*Section 8(f)*

█ Taylor also takes issue with the second part of the Board's decision reversing the ALJ's conclusion—based on the record of Legrow's previous back injuries—that Taylor is entitled to relief under § 8(f) of the LHWCA. Section 8(f) serves to limit an employer's liability when an employee who is partially disabled subsequently injures himself, and the preexisting condition contributes to a greater level of permanent disability. *See* 33 U.S.C. § 908(f); *General Dynamics Corp. v. Sacchetti,* 681 F.2d 37, 39–40 (1st Cir.1982). It does so by putting a 104–week ceiling on the length of the period that an employer must make compensation payments for the contemporary injury and establishing a special fund to pay out the remaining compensation owed to the employee. *See C & P Telephone Co.,* 564 F.2d at 510.

█ Section 8(f) first requires the employer to prove that the claimant had a manifest permanent partial disability prior to the accident which, in combination, caused the claimant permanent total disability. Stated differently, the employer must show that the disability is serious enough to motivate a cautious employer either not to hire or to fire employee because of the "greatly increased risk of employment-related accident and compensation liability." *See id.* at 513. In passing § 8(f), Congress aimed to "encourage employers to hire or continue to employ handicapped workers by ensuring that the employer would not have to compensate in full for a subsequently incurred permanent partial disability when that disability was at-

tributable in part to a previously existing handicap." *Sacchetti*, 681 F.2d at 40.

 In this case, the Board correctly determined that the ALJ could not find that the employer met its burden to show that Legrow had a preexisting permanent partial disability. The fact that Legrow previously sustained back injuries does not, standing alone, establish that he had a preexisting permanent partial disability. *See Director, OWCP v. Belcher Erectors,* 770 F.2d 1220 (D.C.Cir.1985); *Director, OWCP v. Campbell Industries, Inc.,* 678 F.2d 836 (9th Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). Legrow resumed regular physical labor after recovering from each of his previous back injuries. He performed his job duties without any medical restrictions, continuing medical treatment, or medication. Moreover, the Board could determine that the ALJ's conclusion was not supported by substantial evidence. The ALJ arrived at its finding that Legrow had a preexisting disability without explaining why it ignored the contrary uncontroverted evidence of Legrow's complete recovery from previous injuries. Since his conclusion neither comports with the applicable legal standard nor finds support in substantial evidence, we agree with the Board's reversal of the ALJ on this ground. *See Randall,* 725 F.2d at 798 (ALJ must provide clear and convincing reasons for rejecting uncontroverted evidence).

The employer next must show that, but for the preexisting injury, the claimant would not have been rendered totally disabled by the work-related injury. *See Maryland Shipbuilding & Dry Dock Co. v. Director, OWCP,* 618 F.2d 1082 (4th Cir. 1980). Taylor not only failed to show that Legrow had a preexisting injury, it did not show that the preexisting injury, combined with the final 1984 work-related injury, would, or did, create a greater degree of disability. The Board's reversal of § 8(f) relief, therefore, must stand.

### Conclusion

Using the substantial evidence standard, the Board correctly determined that the ALJ erred in concluding that the employer had shown such suitable alternative employment that would overcome the legal presumptions. Thus, we uphold the Board's order of permanent total disability benefits. Likewise, we concur in the Board's holding that the record does not contain sufficient evidence to support the ALJ finding of preexisting disability which, combined with the 1984 injury, caused permanent disability triggering § 8(f) relief.

AFFIRMED.