USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2055 MICHAEL D. WOOD, Petitioner, v. UNITED STATES DEPARTMENT OF LABOR, BATH IRON WORKS CORPORATION, Respondents. ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Gary A. Gabree with whom Stinson, Lupton, Weiss & Gabree, P.A. _______________ _______________________________________ was on brief for petitioner. Richard F. van Antwerp with whom Thomas R. Kelly and Robinson, _______________________ ________________ ________ Kriger & McCallum were on brief for respondents. _________________ ____________________ May 8, 1997 ____________________ BOUDIN, Circuit Judge. The dispute in this case ______________ concerns Michael Wood's claim for partial disability payments from his former employer, Bath Iron Works, Inc. ("Bath"). His benefits were terminated on the ground that Wood had been offered his pre-injury wages and more by Bath in a new capacity at Bath's shipyard in Bath, Maine, but had declined the job offer because he had relocated to another state. The problem posed is obvious; the solution is not. The underlying facts are largely undisputed. Starting in January 1988, Wood worked as an insulator at the Bath, Maine shipyard, installing fiberglass and polyamide foam materials. In October 1988, he developed breathing and sinus problems, and a skin rash, apparently as a result of exposure to dusts and fumes in his job at Bath. Bath kept him on in a position that did not involve contact with these materials until December 1988, when Wood was terminated.  In May 1989, Wood filed a claim with the Department of Labor's Office of Workers' Compensation Programs ("OWCP") seeking disability benefits under the Longshore and Harbor Workers' Compensation Act ("the Act"), 33 U.S.C. 901-950. That statute creates a familiar statutory scheme for no-fault compensation, financed by the employer, where the employee suffers a job related disability. In February 1990, before the claim was resolved, Wood returned to Bath as a delivery truck driver. -2- -2- In March 1991, an Administrative Law Judge in the Labor Department awarded Wood total disability payments for two days in December 1988, immediately following his dismissal from Bath, 33 U.S.C. 908(a), and partial disability payments for about two months thereafter based on the difference between the $356 weekly pay Woods had earned as an insulator at Bath and his actual wages earned thereafter (working for other employers). 33 U.S.C. 908(c)(21). Because the new job Wood took with Bath as a delivery driver in February 1990 paid more than his old insulator wages, he was awarded no disability benefits after his reemployment date.  In August 1991, Wood was again laid off by Bath, due in part to his lack of seniority. In October 1991, having been advised by Bath's personnel office that his layoff was "permanent," and having found no other suitable job in Bath, Wood moved to Shortsville, New York, the town in the western part of that state where he had grown up and where his immediate family still lived. With his brothers' help, Wood landed a series of auto mechanic jobs, making $300-315 weekly on a fairly steady basis from November 1991 through at least April 1993.  During this period in Shortsville, Wood was twice offered reemployment by Bath. In March 1992, Bath contacted Wood to offer him a position similar to the delivery driver -3- -3- job he had held earlier. But when Wood went to Maine for a physical examination, he discovered that the recall was a mistake, caused by a Bath hiring employee's mistaken reliance on job type seniority rather than overall union seniority.  In February 1993, Bath recalled Wood a second time, but he failed to report to Bath for a scheduled physical. Although Bath repeated the offer several times, Wood declined, apparently for several reasons: an inability to relocate soon enough to report for work in March, as Bath required; the fact that the job was only "guaranteed" for 30 days; and Wood's increasing ties to Shortsville, including care of his then-hospitalized mother. As a result, Bath terminated Wood's seniority-based rights to future employment pursuant to the union contract. In the meantime, Wood had renewed his claim for disability benefits. In August 1991, Wood sought new benefits for partial disability under 33 U.S.C. 908(c)(21); the Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury." Id. 902(10). Wood claimed that his ___ Shortsville earnings accurately reflected his present earning capacity, see id. 908(h), and asked that his earlier ___ ___ disability award be modified, as provided by 33 U.S.C. 922, based on the gap between his pre-injury Bath insulator wages and his lower Shortsville earnings. -4- -4- In October 1993, a different Administrative Law Judge rendered the decision that is now before us on appeal. As to the period between August 1991 and March 1993, the ALJ held that Bath had failed to show that Wood's actual earnings in Shortsville underrepresented his earning capacity. He ruled that Wood was therefore entitled to disability payments for that period based on the difference between the wages he had earned as a Bath insulator in 1988 and his lesser actual wages in Shortsville. However, the ALJ also found that in February and March 1993 Bath had made Wood a bona fide reemployment job offer _________ that would have paid more than Wood's pre-injury wage, and that Wood declined the offer for his own personal and family reasons. The ALJ held that the offer established that, from this time forward, Wood's earning capacity was not impaired as a result of his disability. Wood's testimony had made clear, said the ALJ, that Wood would not have accepted the Bath job even if it had been offered as a permanent one. Accordingly, Wood's partial disability benefits were cut off after that date.  In December 1993, Wood appealed the portion of the decision denying benefits after March 1993 to the Labor Department's Benefits Review Board, as allowed by 33 U.S.C.  921(b). On September 12, 1996, the Review Board sent Wood a notice pursuant to Pub. L. 104-134, 101(d), 110 Stat. 1321- -5- -5- 219 (1996), stating that the decision was to be considered affirmed for purposes of appeal to this court. Wood filed a motion for reconsideration which the Review Board denied. He then filed a notice of appeal to this court pursuant to 33 U.S.C. 921(c). In reviewing such compensation decisions, this court normally accepts the ALJ's findings of fact where they are supported by substantial evidence, and reviews legal questions de novo. CNA Ins. Co. v. Legrow, 935 F.2d 430, 433 _______ ____________ ______ (1st Cir. 1991). The central issue in our case, however, does not neatly fit within these polar categories. Our main task here is to discern standards--an amalgam of law and policy--to cope with a recurring problem with many variations: how earning capacity should be calculated when the employee, after the injury, moves to a new community.  We begin with the Act. For some partial disabilities (e.g., the loss of a finger), the Act schedules a payment, 33 ____ U.S.C. 908(c)(1)-(20), but for unscheduled injuries such as Wood's, the Act requires that the employee's reduced earning capacity be determined; the employer is then required to pay regularly two thirds of the difference between the employee's pre-injury wages and his post-injury reduced earning capacity. Id. 908(c)(21), 908(e). Actual post- ___ injury earnings are evidence of capacity but are not conclusive. Id. 908(h). ___ -6- -6- Wood's earnings in Shortsville were less than his pre- injury wages as a insulator at Bath. The employer has the burden of proving that the claimant's earning capacity is greater than his actual earnings. Avondale Shipyards, Inc. ________________________ v. Guidry, 967 F.2d 1039, 1042-43 (5th Cir. 1992). Here, ______ Bath does not claim that Wood could have earned more in Shortsville; but it says that its own offer shows that he could have exceeded his own pre-injury wages in Bath. The ALJ so found, at least implicitly, and Wood does not directly dispute the finding. But the statute itself does not tell us where earning _____ capacity is to be measured. The closest it comes to addressing the issue at all--and it is not very close--is as follows: The wage-earning capacity of an injured employee in cases of partial disability under subsection (c)(21) of this section or under subsection (e) of this section shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: Provided, however, That if the employee __________________ _______________ has no actual earnings or his actual earnings do ___________________________________________________ not fairly and reasonably represent his wage- ___________________________________________________ earning capacity, the deputy commissioner may, in ___________________________________________________ the interest of justice, fix such wage-earning ___________________________________________________ capacity as shall be reasonable, having due regard _______________________________ to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.  33 U.S.C. 908(h) (emphasis added). -7- -7- This is a typical problem presented in an age of statutes; the Act's language does not squarely answer the question posed, and often enough Congress never gave a thought to the issue. Sometimes the responsible agency fills in such lacunae through regulation, but not so here. Even so, in the normal case, the agency's individual case decisions tend to mark out a pattern that deserves substantial deference, see SEC v. Chenery Corp., 332 U.S. ___ ___ _____________ 194, 202-03 (1947), and the agency's application of general standards to specific facts is usually upheld if "reasonably defensible." Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 891 _______________ ____ (1984). The problem of deference in our case is more complicated than it is under the ordinary regulatory statute. Administrative authority under the Act has been assumed by the Secretary of Labor, 33 U.S.C. 939, delegated to an assistant secretary, and redelegated in turn to the director of the OWCP. 20 C.F.R