USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 96-2162 DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Petitioner, v. BATH IRON WORKS CORPORATION, COMMERCIAL UNION INSURANCE COMPANY AND LIBERTY MUTUAL INSURANCE COMPANY, Respondents. _________________________ PETITION FOR REVIEW OF A FINAL ORDER OF THE BENEFITS REVIEW BOARD _________________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Michael S. Hertzig, Attorney, United States Department of ___________________ Labor, with whom J. Davitt McAteer, Acting Solicitor of Labor, _________________ Carol A. De Deo, Associate Solicitor, and Janet R. Dunlop, _________________ _________________ Counsel for Longshore, were on brief for petitioner. Kevin M. Gillis for respondents. _______________ _________________________ November 6, 1997 ________________________ COFFIN, Senior Circuit Judge. This case comes before us on ____________________ a petition for review of a provision of a final order of the Benefits Review Board ("Board") that awarded Bath Iron Works ("BIW") Section 8(f) relief under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901-950 (1988) ("LHWCA"). Section 8(f) of the LHWCA provides that an employer obliged to pay disability benefits to an employee may be relieved from full liability if the employee's compensable disability was "materially and substantially greater" as a result of a prior, non-work-related disability.1 The Director, Office of Workers' Compensation Programs ("OWCP"), appeals the Section 8(f) award to BIW on a number of grounds, most of which are unnecessary for us to reach, because we find that the Administrative Law Judge ("ALJ") failed to determine, and the record contains insufficient evidence to show, that the required standard of "materially and substantially greater" was met. We therefore grant the petition for review and reverse the Section 8(f) award. Claimant Frank H. Johnson worked as a pipe-fitter at the BIW shipyard for various periods from 1951 until his retirement in  ____________________ 1 The issue in this case concerns who should bear the primary responsibility for paying compensation to the claimant. Under the LHWCA, the employer pays the full amount unless it meets the requirements set forth in Section 8(f), in which case its liability for payment to disabled employees is limited to 104 weeks and any remaining compensation owed is paid by a special second injury fund. 33 U.S.C. 908(f)(1) & (2)(A). The fund consists of contributions from carriers and self-insured employers, and is intended to distribute among all employers the cost of compensating employees, while ensuring that employees with disabilities receive full benefits for their work-related injuries. Bath Iron Works Co. v. Director, OWCP, 950 F.2d 56, 58 ___________________ ______________ n.4 (1st Cir. 1991). -2- January 1984. During his employment at BIW, he was exposed to and inhaled asbestos dust and fibers at the shipyard. Claimant's exposure ended in 1978 or 1979, when the crumbling asbestos in his work area was sealed.  In 1986 claimant was diagnosed as suffering from a twenty- five percent impairment due to asbestosis, and he successfully filed a claim for workers' compensation benefits under the LHWCA based on that impairment. The ALJ's award of Section 8(f) relief to BIW became a final order for the purposes of obtaining judicial review before us after the Board failed to take action on the Director's appeal within a year.2 Because the appropriateness of Section 8(f) relief turns on the source and nature of claimant's pulmonary impairment, we must examine closely the medical evidence in the record.  THE MEDICAL EVIDENCE The earliest evidence that claimant suffered from an asbestos-related lung condition appears to have come in 1982 from  ____________________ 2 Another ALJ initially awarded BIW Section 8(f) relief from full liability based on evidence that claimant suffered from a pre-existing knee injury, as well as "other medical conditions," all of which were manifest during the period of claimant's employment at BIW and contributed to his overall disability. The Director, OWCP, successfully appealed the Section 8(f) award, and the Board remanded the case, concluding that claimant's knee condition could not be used as a basis for relief because it was unrelated to his pulmonary impairment. The Board directed the ALJ on remand to consider whether the "other medical conditions" by themselves formed a basis for Section 8(f) relief. We review the remand decision here. -3- a routine chest x-ray performed prior to a knee operation.3 According to Dr. Schall, claimant's treating physician, the x-ray revealed "interstitial fibrosis and pleural plaques consistent with asbestosis."6 Multiple pulmonary function tests conducted from that time through 1986 revealed that claimant suffered from diminished lung function. Dr. Schall, in a letter dated December 1983, summarized claimant's condition at that time,  His most recent chest x-ray taken May 19, 1983 showed pulmonary findings of a thickened pleura with some calcific pleuritides over the diaphragm and increased pulmonary markings inferiorly. He still has no significant complaints of shortness of breath. His pulmonary functions and chest x-rays show a mixture of chronic obstructive pulmonary disease and asbestosis with some restrictive component.[7] Certainly, asbestosis can be considered a contribution . . . [to] his pulmonary status. He is currently not disabled on a pulmonary basis and would be capable of full-time regular employment. At the present time it's impossible to predict what his prognosis is. Certainly his chronic obstructive pulmonary disease is far more risky to him and is in a further advanced state than is his asbestosis. He has the concomitant problems of obesity, chronic alcoholism and severe osteoarthritis  ____________________ 3 Dr. Schall stated that claimant showed some evidence of asbestos exposure as early as 1978. As there is no evidence in the medical record indicating physical damage resulting from asbestos exposure before 1982, we agree with the ALJ's determination that claimant's asbestos-related lung condition is properly dated back to 1982. 6 After this diagnosis, claimant filed a protective claim, thereby satisfying the LHWCA's notice requirements. 7 In reporting on claimant's condition, Dr. Schall refers to claimant's "obstructive" pulmonary function and his "restrictive" pulmonary function. The former is claimant's condition independent of asbestosis, while the latter is his asbestos-related condition. -4- of his knees. His primary disabling feature is his knees.8  In deposition testimony in 1988, Dr. Schall described the claimant's condition as "severe obstructive with mild to moderate restrictive disease."  Dr. Killian, a physician specializing in respiratory medicine, in a March 1986 letter reporting upon his recent examination of claimant, concluded that claimant suffered from five conditions: asbestosis of the left lower lobe, pleural plaques, obesity, hypertension, and chest pain suggestive of ischemic heart disease. He added that claimant "does indeed have both pleural plaques and asbestosis which is due to his asbestos exposure occurring at work. The degree of disability present from a pulmonary perspective can be classified as mild. . . . [H]is present impairment has caused noticeable disability within the last year or so." In deposition testimony in 1988, Dr. Killian concluded that claimant's cigarette smoking, his obesity,  ____________________ 8 In this letter, Dr. Schall also gave the following review of claimant's medical history: The man was first seen in 1978 for a routine examination prior to arthroscopic examination of his knees. He had at that time a smoking history that included in excess of 100 pack years but had been off cigarettes for eight months. He denied shortness of breath stating that his knees limited his physical activities. He had a history of hypertension. He's worked as a pipe-fitter and has been exposed to asbestos through his work environment. His physical findings at that time showed his chest to be clear with a fair respiratory expansion. Chest x-rays at that time showed some pulmonary scarring consistent with asbestosis. -5- his arthritic knees and lung damage caused by asbestos exposure contributed to claimant's overall disability.  In 1987 a pulmonary specialist, Dr. Corbin, examined claimant and reviewed his pulmonary function tests. He concluded,  I believe that Mr. Johnson has asbestos-related pleural disease and pleural fibrosis. . . . I am certain that this was related to his exposure to asbestos during the time of his employment at Bath Iron Works. . . . Mr. Johnson also has restrictive lung disease which is mild to moderate in degree. . . . I feel certain that this is related to his pleural fibrosis. The patient is obese, but patients with obesity alone rarely have restrictive pulmonary function. As I have stated before, I think his pleural fibrosis is related to his employment at Bath Iron Works. . . . [H]is symptoms of shortness of breath and restricted activity are significantly contributed to by his physical deconditioning and obesity. Another physician, Dr. Schmidt, reviewed claimant's June 11, 1982 pulmonary function studies and concluded that they showed "restrictive lung disease and minimal obstructive airway disease." He also reported that claimant's January 20, 1983 pulmonary function studies showed "mild obstructive airway disease," which "appears to be new since June, 1982." In 1986 claimant, for the first time, was diagnosed as permanently partially disabled as a result of asbestosis. It is undisputed that claimant was twenty-five percent partially disabled at that time. No finding was made as to what amount of this disability was specifically attributable to asbestosis or to any other kind of pulmonary impairment. -6- ENTITLEMENT TO SECTION 8(f) RELIEF --  PERMANENT TOTAL AND PARTIAL DISABILITY CRITERIA DISTINGUISHED We review the Board's decision for errors of law,9 and examine the record to determine whether the ALJ's findings are supported by substantial evidence. 33 U.S.C. 921(b)(3); CNA ___ Insurance Co. v. Legrow, 935 F.2d 430, 434 (1st Cir. 1991).  _____________ ______ This appeal raises numerous complex issues concerning the application of Section 8(f). We believe this case can be resolved on a fairly straightforward basis not requiring us to consider many of the issues raised on appeal. As we discuss below, unless the employer establishes that the employee's compensable permanent partial disability was "materially and substantially greater" as a result of a prior disability, a Section 8(f) award is unavailable to the employer, and no further analysis is required. Because existing case law has largely ignored the clear threshold requirements of Section 8(f), however, we think it helpful to clarify certain preliminary issues in the Section 8(f) framework. We choose, therefore, to review in detail the initial steps that must be met to support an award of Section 8(f) relief, up to and including consideration of the "materially and substantially greater" standard; we do not consider issues raised on appeal that go beyond these threshold requirements.   ____________________ 9 In this case, because the ALJ order is final as a result of the Board's failure to consider the Director's appeal within one year, we treat the ALJ's order as the Board's decision.  -7- The LHWCA provides compensation for the death or disability of federal maritime employees if the disability or death results from a work-related injury. Under what has been termed the "aggravation rule," the LHWCA requires an employer to provide full coverage for a worker's job-related disability even when the disability resulted from some combination of a current employment injury and a pre-existing condition. Ceres Marine Terminal v. ______________________ Director, OWCP, 118 F.3d 387, 389 (5th Cir. 1997). In response ______________ to concern that this "aggravation rule" would give the employer an incentive to discriminate against partially disabled workers based on a fear of increased liability, Congress enacted Section 8(f). Id.; see also CNA, 935 F.2d at 435 (explaining that the ___ ___ ____ ___ statute was aimed at encouraging employers to hire or continue to employ handicapped workers by limiting liability for a subsequently incurred permanent partial disability attributable in part to a previously existing handicap).  Section 8(f) provides in relevant part: (f) Injury increasing disability: (1) In . . . cases of total permanent disability . . . found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide . . . compensation payments . . . for one hundred and four weeks only. . . .  In . . . cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide . . . compensation for one hundred and four weeks only. 33 U.S.C. 908(f)(1). -8- The employer carries the burden to prove that the elements of Section 8(f) are met. See Director, OWCP v. Edward Minte Co., ___ ______________ _________________ Inc., 803 F.2d 731, 737 (D.C. Cir. 1986); Director, OWCP v. ____ ______________ Newport News Shipbuilding & Dry Dock Co., 676 F.2d 110, 115 (4th _________________________________________ Cir. 1982).  To qualify for the limitation on full liability, the employer therefore must prove that the claimant had a permanent partial disability within the meaning of Section 8(f), and that the condition existed prior to the work-related injury. We have described the standard for "disability" under Section 8(f) as "[a condition] serious enough to motivate a cautious employer either not to hire or [to] fire [the] employee because of the 'greatly increased risk of [an] employment-related accident and compensation liability.'" CNA, 935 F.2d at 435. Thus, a person ___ may be found to suffer from a pre-existing disability even if able to work full time in the identical position. The pre- existing disability must, however, be a "condition," and not merely an unhealthy behavior likely to lead to a condition. See ___ General Dynamics Corp. v. Sacchetti, 681 F.2d 37 (1st Cir. 1982) ______________________ _________ (finding that an employee's habit of smoking moderately for ten years prior to developing asbestosis as a result of exposure at work did not constitute a qualifying prior permanent partial disability so as to limit an employer's liability under Section 8(f)). To qualify as pre-existing, the condition must exist before the work-related injury; a disability that occurs simultaneously will not meet the requirement. See Fineman v. ___ _______ -9- Newport News Shipbuilding & Dry Dock Co., 27 BRBS 104 (1993) ___________________________________________ (citing Newport News Shipbuilding & Dry Dock Co. v. Harris, 934 _________________________________________ ______ F.2d 548 (4th Cir. 1991)).  Once the employer establishes that the employee had a qualifying pre-existing disability, the scope of the compensable injury must be considered. Although most cases have failed to acknowledge the differing standards, the proper analysis at this point turns on whether the employee suffers from a full or partial disability.  In cases where the employee is fully disabled, the employer must show that the disability is not due solely to the most recent injury. E.P. Paup Co. v. Director, OWCP, 999 F.2d 1341, ______________ ______________ 1352 (9th Cir. 1993); Todd Pacific Shipyards Corp. v. Director, _____________________________ _________ OWCP, 913 F.2d 1426, 1429 (9th Cir. 1990). "Thus, if the ____ employment injury was sufficient, by itself, to cause the claimant's total permanent disability, the employer should be liable for the entire compensation award and section 8(f) relief should be denied. The aggravation rule that [S]ection 8(f) was intended to counteract never comes into play under these circumstances because the employer would be liable to the same extent if an able-bodied employee suffered the same injury." Ceres Marine, 118 F.3d at 390. The employer cannot satisfy the _____________ Section 8(f) standard merely by demonstrating that the employee's pre-existing injury compounded his employment-related injury; rather, the employer must show that, but for pre-existing -10- disability, claimant would be employable. Director, OWCP v. ______________ Jaffe New York Decorating, 25 F.3d 1080, 1085 (D.C. Cir. 1994). _________________________ In cases where the employee is partially disabled, the employer must show that the current permanent partial disability "is materially and substantially greater than that which would have resulted from the subsequent injury alone." 33 U.S.C.  908(f); Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 293 __________________________ _____ (1995); Director, OWCP v. Ingalls Shipbuilding, Inc., --- F.3d -- ______________ __________________________ -, 1997 WL 612743, *4 (5th Cir. 1997). A "heavier burden" is placed on the employer to obtain Section 8(f) relief in the case of a permanently partially disabled employee than in the case of a fully disabled employee. Director, OWCP v. Newport News Shipbuilding & Dry Dock Co. _______________ ____________________________________________ ("Newport News"),10 8 F.3d 175, 185 (4th Cir. 1993), aff'd on ____________ ________ other grounds, 514 U.S. 122 (1995) (citing Two "R" Drilling Co., _____________ _____________________ Inc. v. Director, OWCP, 894 F.2d 748, 750 (5th Cir. 1990)). In ____ ______________ Newport News, the court stated: ____________ To satisfy this additional prong, the employer must show by medical evidence or otherwise that the ultimate permanent partial disability materially and substantially exceeds the disability as it would have resulted from the work-related injury alone. A showing of this kind requires quantification of the level of impairment that would ensue from the work-related injury alone. In other words, an employer must present evidence of the type and extent of disability that the claimant would suffer if not previously disabled when injured by the same work-related injury. Once the employer establishes the level of disability in the absence of a pre-existing permanent partial disability,  ____________________ 10 Our opinion cites a number of cases involving Newport News Shipbuilding & Dry Dock Co. The abbreviation, "Newport _______ News," refers only to this Fourth Circuit case. ____ -11- an adjudicative body will have a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater. 8 F.3d at 185-86; see also Ingalls, 1997 WL 612743, *4. Thus, an ___ ____ _______ employer is required to show the degree of disability attributable to the work-related injury, so that this amount may be compared to the total percentage of the partial disability for which coverage under the LHWCA is sought. The court in Newport News specifically rejected the argument ____________ that an employer need only show medical evidence that a percentage of whole body impairment existed before the work- related injury, that a greater percentage of whole body impairment exists after the work-related injury, and that the ultimate permanent partial disability was causally connected to the earlier impairment to satisfy its burden of the contribution element:  [Such a] showing eviscerates the requirement from section 8(f) that the ultimate permanent partial disability be materially and substantially greater than a disability from the work-related injury alone would be, by overlooking the possibility that the work- related injury alone could cause virtually the same level of disability as that manifested in the ultimate permanent partial disability through the contribution of the pre-existing permanent partial disability.  8 F.3d at 184. Despite the clear statutory language of Section 8(f), and despite cases such as Newport News and Ingalls, emphasizing the ____________ _______ need to meet the "materially and substantially greater" standard in partial disability cases, some cases have permitted a looser contribution finding, or have failed to consider the standard at -12- all. See, e.g., Skelton v. Bath Iron Works Corp., 27 BRBS 28, *2 ___ ____ _______ _____________________ (1993) (stating that the Section 8(f) contribution requirement may be met by a showing "that the pre-existing disability was aggravated by claimant's subsequent employment."). However, a finding that a claimant's permanent physical impairment is greater as a result of the combination of the pre-existing and work-related injuries is clearly insufficient to satisfy Section 8(f). See Newport News, 8 F.3d at 184-85. Failure to apply the ___ ____________ statutory criteria of "materially and substantially greater" constitutes error. BIW'S SECTION 8(f) BURDEN APPLIED I. The ALJ's Findings and Conclusions __________________________________ The ALJ defined the essential elements for Section 8(f) relief as: "(1) the employee had a pre-existing permanent partial disability, (2) which was manifest to the employer prior to the subsequent compensable injury, and (3) which combined with the subsequent injury to produce or increase the employee's permanent total or partial disability, a disability greater than that resulting from the first injury alone." In concluding that BIW met these elements, the ALJ relied on the following: The record reflects . . . (2) that [claimant] has experienced shortness of breath and pulmonary problems since at least May of 1978 as he was required to be examined by Dr. Schall for pre-operative clearance prior to knee surgery, (3) that he has suffered from obesity and hypertension for many years, (4) that he had a long history of cigarette smoking, i.e., at least 1 to 3 packs per day for forty years, a habit he stopped in 1978, (5) that Claimant's asbestos-related disease was first reported on his chest x-rays in April -13- of 1982, . . . (7) that his subsequent diagnostic tests, including pulmonary function tests, showed an increase of his asbestos-related disease and a worsening of his shortness of breath, (8) that Dr. Schall, as of December 5, 1983, opined that Claimant's pulmonary impairment was due to "a mixture of chronic obstructive pulmonary disease and asbestosis with some restrictive component," (9) that Claimant's "chronic obstructive pulmonary disease is far more risky to him and is (in) a further advanced state than is his asbestosis," (10) that he "has the concomitant problems of obesity, chronic alcoholism and severe osteoarthritis of his knees," . . . (12) that the doctors are in agreement that Claimant's permanent partial impairment is due to the combination of his asbestos-related disease, i.e., his asbestosis, his hypertension, his obesity, his cardiac problems diagnosed as ischemic heart disease, (13) that the doctors reiterated their opinions at their post-hearing depositions . . . , [and] (14) that Claimant's permanent disability is the result of the combination of his pre-existing permanent partial disability (i.e. his pulmonary problems since at least May 18, 1978, his chronic obesity, his chronic hypertension, his cardiac problems and his cigarette smoking habit of at least 100 pack years and as high as 120 pack years) and his work-related asbestosis . . . [. His] pre-existing disability, in combination with the subsequent work injury, has contributed to a greater degree of permanent disability, according to Dr. Schall, Dr. Corbin and Dr. Killian. (citations to record omitted). The ALJ concluded from the evidence that claimant fit the category of person that Section 8(f) was designed to protect: "Claimant's condition, prior to his injury in 1986, was the classic condition of a high-risk employee whom a cautious employer would neither have hired nor retained in employment due to the increased likelihood that such an employee would sustain another occupational injury."  -14- Other than what is included in a citation from another case, quoted for a different proposition,11 the ALJ in no place mentions the Section 8(f) requirement, or makes a finding, that the ultimate permanent disability is materially and substantially greater as a result of the preexisting disability than the disability which would have resulted from the subsequent injury alone. II. The Missing Assessment: the ALJ Opinion and the Record  ______________________________________________________ Under the LHWCA, Johnson's compensable injury occurred in 1986, when he was diagnosed with a twenty-five percent permanent disability resulting from asbestosis.12 Therefore, only the non-  ____________________ 11 At the conclusion of the order, the ALJ quoted Adams v. _____ Newport News, 22 BRBS 78, 85 (1989), for the proposition that ____________ only pulmonary problems were relevant to the Section 8(f) determination; physical problems relating to other impairments, such as claimant's knee injury, could not be considered. In the section of Adams quoted by the ALJ, the Board mentions the _____ "materially and substantially greater" requirement only as part of its general explanation that this standard must be met by a pre-existing disability that impacts the same type of physical functioning as does the work-related injury. 12 In long-latency disease cases, such as asbestosis, using the date of last exposure as the relevant time of injury is inappropriate because the injury arises years later when the disease manifests itself. See Bath Iron Works Co., 506 U.S. at ___ ____________________ 163. Therefore, while not determinative of our finding, we note here the applicable date for time of injury is the date that claimant was diagnosed with -- and thus became aware that he suffered from -- a twenty-five percent permanent partial disability resulting from asbestosis. See Harris, 934 F.2d at ___ ______ 553 (stating that "the time of injury is deemed to be the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability," citing 33 U.S.C. 910(i) and noting, "[s]ince the issue before the court is how long the employer is going to have to pay the amount determined to be due under [Section 910], it necessarily follows that the definition of time of injury found therein would be used for the purposes of -15- asbestosis-related pulmonary disability that he suffered prior to 1986 is relevant to our Section 8(f) analysis. Claimant suffered from pulmonary problems, including obstructive pulmonary conditions unrelated to asbestos prior to 1986. The evidence in the medical record supports the ALJ's conclusion that these problems, probably resulting from obesity and smoking, amounted to "the classic condition of a high-risk employee whom a cautious employer would neither have hired nor retained in employment due to the increased likelihood that such an employee would sustain another occupational disease." While we need not reach this issue to conclude this case, we note here that we agree with the ALJ's finding that claimant met the Section 8(f) criteria of suffering from a pre-existing permanent disability prior to his work-related injury.  To be entitled to Section 8(f) relief, however, BIW was required to carry the burden of demonstrating that claimant's twenty-five percent disability was materially and substantially greater than that which would have resulted from the asbestos exposure alone. To do this, BIW was required to show the degree of disability attributable only to claimant's asbestosis. See ___ Newport News, 8 F.3d at 185-86. Then, the ALJ should have _____________ compared this information with claimant's twenty-five percent disability to determine whether the "materially and substantially greater" standard had been met. See id. ___ ___  ____________________ Section 8(f).").  -16- The ALJ, however, made no such determination. He neither discussed the statutory requirement, nor applied it in analyzing the facts of this case. Further, the ALJ lacked the evidence to apply the "materially and substantially greater" standard even had he chosen to do so. No evidence of the degree of disability attributable only to claimant's asbestosis was ever presented. Nor can such disability be deduced from the medical records relating to claimant's non-asbestos-related injury. While Dr. Schall did state that the non-related asbestos lung disease was in a further advanced state than claimant's asbestosis, Dr. Schall made this diagnosis in 1983. At that time, claimant was not disabled as a result of pulmonary impairment. A 1983 assessment, therefore, could not establish the degree to which claimant's 1986 compensable injury was impacted by an earlier existing non-asbestos-related disability. Dr. Killian, in reporting on claimant's condition in 1986, concluded that claimant's prior non-asbestos-related disability contributed to claimant's overall disability. But he gave no indication of how much contribution existed, and included in his assessment of claimant's "overall disability" claimant's knee problems, which cannot properly form part of a Section 8(f) determination. Dr. Corbin provides the best evidence for BIW, stating, in 1987, that claimant's "symptoms of shortness of breath and restricted activity are significantly contributed to by his physical deconditioning and obesity." However, even this report fails to -17- meet the required standard. Dr. Corbin provides a general statement that includes claimant's shortness of breath and spans his "restricted activity." The report does not indicate the extent to which claimant's pre-existing condition contributed to his permanent partial disability, the twenty-five percent pulmonary impairment for which condition alone claimant received compensation under the LHWCA.  Therefore, there being neither sufficient direct evidence of the contribution of asbestosis to claimant's overall permanent partial disability nor a basis for deducing such contribution from the contribution attributable to the pre-existing condition, BIW has failed to carry its considerable burden. -18- CONCLUSION Because we determine that the ALJ failed to find, and the record contains insufficient evidence to show, that claimant's current permanent partial disability is materially and substantially greater than that which would have resulted from asbestosis alone, we do not address the remaining issues raised by appellant. For the reasons discussed, we reverse the Section 8(f) award to BIW.   -19-